FORD MOTOR CO., APPELLANT, *v.* THE CONTINENTAL CASUALTY CO., APPELLEE.

(No. 27039—Decided June 3, 1965.)

*Messrs. Bulkley & Butler,* for appellant.
*Messrs. Hauxhurst, Sharp, Cull & Kellogg,* for appellee.

CORRIGAN, J. This appeal on questions of law is by Ford Motor Company, plaintiff, from a judgment and final order of the Court of Common Pleas of Cuyahoga County granting defendant's, Continental Casualty Company's, motion for summary judgment and finding that there was no genuine issue as to any material fact, and finding further that any liability of the Ford Motor Company arising out of the injuries sustained by Joseph L. Meter on January 10, 1958, at the premises of Ford Motor Company on Brookpark Road, Brook Park, Ohio, was not cov-

ered by defendant's policy No. CL2690936 issued to Clifton Concrete & Supply Company and that defendant is entitled to judgment as a matter of law.

It was stated in the journal entry of the trial court that these findings and the judgment were arrived at after a consideration of the motion for summary judgment, the pleadings, the petition of Joseph L. Meter in case No. 714468 in Common Pleas Court, the deposition of Joseph L. Meter, the deposition of Albert Maver, the affidavit of William Synan, the affidavit of E. A. Pedley, the evidence and the briefs and argument of counsel.

After a careful reading and consideration of these enumerated documents found in the court file, the transcript and the bill of exceptions, we find and hold that there is no genuine issue present in the case as to any material fact in connection with the question of liability under Continental's policy.

The lawsuit was initiated by Ford to recover a $22,500 settlement, plus attorneys' fees and costs of $2,582.77, paid by it in obtaining a settlement and dismissal of a suit brought against it by one Joseph L. Meter. Meter was a truck driver employed by Clifton Concrete & Supply Company. Ford, by contract, sold fly-ash cinder to Clifton at a certain price per ton delivered to and shipped via Clifton's trucks. Meter was injured during the delivery process on Ford's premises. Meter then sued Ford for those injuries, and Ford tendered the defense of that suit and the potential liability therefor to Continental, claiming that it (Ford) was covered as an additional assured under a Continental policy of insurance insuring Clifton's trucks. Continental declined coverage. In the petition filed by Ford, the above settlement is set forth, and its reasonableness is denied by Continental's answer.

Meter had picked up loads of fly-ash from Ford, under Ford's contracts with Clifton, for some years. The loading mechanism was called an ash silo. This equipment was on Ford property, owned by Ford and erected by Ford. It consisted of an elevated storage tank for the fly-ash. The ash was mechanically discharged from the tank into a revolving drum in which it was sprayed with water, and then sent into a chute from which, by gravity flow, it was loaded on the truck. The loading procedure had been established by Ford. Meter drove his truck under the chute and proceeded to start the drum revolving by

pushing a button. He then pushed a second button to start the feed from a hopper in the bottom of the storage tank. This caused the fly-ash to come out of the hopper into the revolving barrel. Meter then pulled a chain actuating a vibrator near the top of the chute into which the fly-ash moved from the barrel and from the chute into the Clifton truck.

On the day of the accident, January 10, 1958, the temperature was below freezing, 20 degrees Fahrenheit. Ford had instructed Meter on that day that the revolving drum was to be left in operation after the truck was filled so that residual ashes and the water in the drum would not freeze.

Under the established loading procedure no sweeping or clearing up of the fly-ash spillage was done in the area under the loading apparatus until after the last loading of the day. The last load was in the Clifton truck which Meter was driving at the time of the accident on the day in question. Before completing the loading, Meter drove the truck forward and out from under the silo, stopped the truck and proceeded with the process of sweeping up and then shoveling into the truck the fly-ash and cinders which had in the process of loading missed the truck from the chute. This latter procedure was in accordance with his instructions from Ford. While Meter was engaged in accomplishing this phase of the loading, a large chunk of frozen cinders fell out of the chute and struck his body, breaking his leg and inflicting other serious injuries.

As a result of this accident, Meter brought suit against Ford. Ford notified Continental of Meter's suit and demands with regard to settlement and requested Continental to take over the defense, to which Continental refused to accede. Subsequently, after notice and further demand upon Continental, Ford settled Meter's suit and brought the present action against Continental.

Continental's policy insuring Clifton provides in part as follows:

"Agrees with the insured, named in the declarations made a part hereof, in consideration of the payment of the premium and in reliance upon the statements in the declarations, subject to the limits of liability, exclusions, conditions, and other terms of this policy:

"Insuring Agreements

"I. Coverage A—Bodily Injury Liability—Automobile.

"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury * * * sustained by any person, caused by accident, and arising out of the ownership, maintenance, or use of any automobile.

"* * *

"III. Definition of Insured.

"The unqualified word 'insured' includes the named insured and also includes * * *

"(2) Under coverages A and C, any person while using an owned automobile or a hired automobile and any person or organization legally responsible for the use thereof provided the actual use of the automobile is by the named insured or with his permission * * *.

"* * *

"Conditions

"3. Definitions.

"* * *

"(f) Purposes of Use.

"* * * Use of an automobile includes the loading and unloading thereof."

The policy which Continental issued to Clifton Concrete & Supply Company also provides:

"Exclusions

"This policy does not apply:

"* * *

"(f) Under coverages A and B to any obligations for which the insured or any carrier as his insurer may be held liable under any workmen's compensation, unemployment compensation or disability benefits law, or under any similar law.

"(g) Under coverage A, to bodily injury to or sickness, disease or death of any employee of the insured arising out of and in the course of (1) domestic employment by the insured, if benefits therefor are in whole or in part either payable or required to be provided under any workmen's compensation law, or (2) other employment by the insured."

Appellant has not set out assignments of error, so-styled,

as contemplated by the Rules of the Court of Appeals but has titled a section of its brief as ''The Issues.''

Under this heading appellant's brief recites in part:

''There is actually but one issue:

''What was the intent of the parties under all the circumstances known and anticipated by them, in the use of the terms and language in the policy?

''* * *

''We think the issues would be more appropriately stated both in the following order and fashion in view of the claimed applicability of Travelers, supra:

''I. Within the intent of the parties and the meaning of the terms chosen by defendant, was Ford in actual use of the truck during the loading process with the express or implied permission of Clifton?

''II. Was such 'actual use' a factor in Meter's injury?

''III. As to an exclusion clause can the employer-employee relationship between the injured person and the named insured apply to the included or additional insured?

''IV. Are there not questions of fact over which reasonable minds can differ which exclude the applicability of the motion for summary judgment?''

Two questions seem to be posed thereby for determination by this court, namely:

1. Did the injury to Meter ''arise out of the use'' of the truck within the meaning of the loading and unloading clause of Continental's insurance policy?

2. Do the ''employee exclusion'' clauses (exclusions (f) and (g)) make the insurance policy inapplicable to the claim of Meter, an employee of Clifton Concrete & Supply Company?

As to the first question, we may begin with the case of *Bobier* v. *National Casualty Co.,* 143 Ohio St. 215, in which the Supreme Court of Ohio had under consideration a very similar liability insurance policy and defined ''loading,'' as used in such policy, in paragraph four of the syllabus:

'' 'Loading,' as used in such insurance policy, begins at the time the insured or his agents or servants connected with the truck, receive the article and, as part of a continuing operation, place it upon the truck; and 'unloading' ceases when the article is taken from the truck by such employees and, as part of a con-

tinuing operation, is delivered to the customer or to the place designated for delivery.''

In *Bobier*, the trucker's employees were carrying a stove from a store and were to place it on a truck. While they were carrying the stove, they damaged other merchandise in the store. The court held that this was part of the loading process.

Further light is shed on our first question by the case of *Travelers Ins. Co.* v. *Buckeye Union Casualty Co.*, 172 Ohio St. 507, involving the construction of a similar automobile insurance policy, in which paragraphs two and four of the syllabus read:

''2. 'Loading,' as used in such insurance policy, begins at the time the insured or his agents or servants connected with the truck receive the article and, as part of a continuing operation, place it upon the truck; and 'unloading' ceases when the article is taken from the truck by such persons and, as part of a continuing operation, is delivered to the customer or to a place designated for delivery.''

''4. 'Loading' and 'unloading' are but component parts of the overall 'use' contemplated by such an insurance contract and do not therefore become determinative of the question of liability unless or until the party charged with negligence is shown to have been actually using the truck so as to qualify as an 'insured' within the definition of that term as used in the policy.''

This latter case involved a driver whose tank truck was parked at a loading platform and who was being handed a loading pipe to insert into the tank for use while pumping fuel oil into the tank. The driver had not yet actually made physical contact with the pipe when oil gushed out and knocked him down. The Supreme Court took the position that, because the pipe had not actually been attached to the truck when the injury happened, the tank truck carrier was not liable for the injury. In effect, the Supreme Court decided that loading had not yet begun; that the owner of the loading platform, Gulf Refining Co., was not yet in actual use of the tank truck for the purposes of loading; and that the mere presence of the tank truck in a position to be loaded was not enough to bring the situation within the coverage of the tank truck's auto liability policy.

In the case at hand, the loading had started and was being carried through to a completion. The driver, Meter, had driven

the truck under the silo in a position where the chute would be above the truck for loading; then, pursuant to his instructions from Ford, he operated the release mechanism starting the fly-ash moving from the silo into the valve feeder which then feeds the cinders into the revolving drum where it is sprayed with water and directed into the chute from which, by gravity, it is fed down into the truck under the chute. During Meter's third load, on the day of the accident, he ran all of the fly-ash or cinders that would come out of the chute, filling the truck about two-thirds full. He then shut off the feed and the water, letting the barrel continue to roll, as he had been instructed. Then he pulled his truck out from underneath the chute in order to sweep up the accumulation from the spillage into little piles so that it could be shoveled into the truck, as he had been instructed by Ford. It was at this time that he was struck and injured by the lump of frozen cinders that came down through the chute. Under the above facts, as reflected by the bill of exceptions, we are of the opinion that Meter was still in the process of loading in accordance with his instructions with regard to Ford's use of the truck under its contract with Clifton.

In our view, loading commences when materials have been started to move from the place of rest to the vehicle being loaded. It is necessary that there be movement of the materials toward the truck whether by chute, pipe, dolly, shovel or other means. Just as long as the movement once started is uninterrupted, the materials are in the process of loading.

This being our conclusion, it follows that coverage under the policy of liability insurance on the Clifton truck extended to Ford as an additional insured.

We find a case similar to our instant factual situation in *Columbia Southern Chemical Corp.* v. *Manufacturers & Wholesalers Indemnity Exchange,* 190 Cal. App. 2d 194, wherein the driver of the insured parked his vehicle under a loading machine. Then a flexible spout would pour soda ash into the body of the truck. The spout could be moved from one hatch to another with a rope. When the driver attempted to move the spout, the rope broke due to a defect, injuring the driver. The court held that the insurance policy on the truck extended coverage and that the term "loading and unloading" expands the coverage intended by the word "use" and that it is not necessary that the

injuries be directly and proximately caused by the vehicle itself. The term ''loading'' was held by the court to cover many phases of that operation, which did not directly involve activities of the truck.

See, also, *Federal Ins. Co. v. Michigan Mutual Liability Co.,* 277 F. 2d 442.

As to question number two: the fact that the truck driver, Meter, was an employee of Clifton, the truck owner, does not exclude coverage for Ford under the omnibus clause of the truck policy, if Ford was ''loading'' the truck and, therefore, using or responsible for the use of the truck. The employee exclusion clause in the policy removes coverage only where the injured person is an employee of the particular insured he is suing. Here Meter sued Ford, an additional insured, and Ford in turn brought suit against the named insured, Clifton, Meter's employer.

Accordingly, the order of the court below finding that any liability of Ford arising out of injuries sustained by Meter on January 10,1958, at Ford's premises was not covered by Continental's policy issued to Clifton is prejudicially erroneous, and the court's finding that Continental's motion for summary judgment is well taken and Continental is entitled to judgment as a matter of law is prejudicially erroneous.

The judgment is reversed and the cause remanded for further proceedings according to law.

*Judgment reversed.*

KOVACHY, P. J., and WASSERMAN, J., concur.