**Maggie W. THOMAS,**
**Petitioner-Appellant,**

v.

**Dorothy ARN, Superintendent,**
**Respondent-Appellee.**

No. 81–3242.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 14, 1982.

Decided April 8, 1983.

Rehearing and Rehearing En Banc
Denied July 15, 1983.

Margery B. Koosed, South Euclid, Ohio, for petitioner-appellant.

David Stocker, Asst. Atty. Gen. of Ohio, Lianne L. Santellani, Columbus, Ohio, for respondent-appellee.

Before ENGEL and MERRITT, Circuit Judges, and BROWN,* Senior District Judge.

ENGEL, Circuit Judge.

Petitioner Maggie W. Thomas' appeal from the denial of her habeas corpus petition requires us to pass upon the constitutionality of Ohio's statutory definition of proof beyond a reasonable doubt, and also requires us to determine whether—at the time of the offense—absence of self-defense was an element of the Ohio crimes of felonious assault and aggravated assault, and whether self-defense negated any element of these crimes. While this latter issue has been considered by this court before, *see* *Isaac v. Engle,* 646 F.2d 1129 (6th Cir.1980) (*en banc*), its resolution was precluded when the Supreme Court, on further appeal, vacated the judgment and directed dismissal of the petition on other grounds. *Engle v. Isaac,* 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982).

The district judge's statement of facts, which we present below, essentially adopted petitioner's view of the events leading to her conviction:

[A]round midnight of the morning of February 2, 1977, the petitioner [Maggie W. Thomas] went to the home of a friend, Sandra Woodland, where she spent the night drinking, listening to records, and talking with Sandra, Sandra's boyfriend, and Sandra's brother Reginald Woodland. Around 7:00 in the morning, after Sandra and her boyfriend had gone to bed, Reginald called the petitioner into a bedroom, asked if she would loan him money, and then slapped her and attempted to choke her. They later returned to the living room, and Sandra came out and asked her brother to go to a store, a five-minute walk away, and buy her some cigarettes. The petitioner also asked for cigarettes, and Reginald told her not to leave. During his absence petitioner took a gun

from her purse, loaded it, and placed it behind her on the chair where she was sitting. When Reginald returned, petitioner testified that some sharp words were exchanged between them, and that then Reginald started towards her. She pulled out the gun and shot twice at the floor, striking Reginald in the foot.[1]

The petitioner was indicted and tried on the charge of violating Ohio's felonious assault statute, Ohio Rev.Code § 2903.11. At trial, Thomas argued that she fired the shots in self-defense. The jury found her innocent of the felonious assault charge, but found her guilty of the lesser included offense of aggravated assault, Ohio Rev. Code § 2903.12.

Petitioner Thomas raises two grounds for habeas corpus relief. She first argues that Ohio's statutory definition of "proof beyond a reasonable doubt" is unconstitutional, and that jury instructions based on this statutory definition violate her right to due process under the Fourteenth Amendment. Second, Thomas argues that the trial judge's instructions, or lack of instructions, concerning the burden of proof as to self-defense denied her the fundamental fairness guaranteed by the Fourteenth Amendment's Due Process Clause.

## I

In his charge to the jury, the Ohio trial judge defined "proof beyond a reasonable doubt" in the language specifically provided by Ohio Rev.Code § 2901.05(D):

"Reasonable doubt" is present when the jurors, after they have carefully considered and compared all the evidence, cannot say they are firmly convinced of the truth of the charge. It is a doubt based on reason and common sense. Reasonable doubt is not mere possible doubt, because everything relating to human af-

fairs or depending on moral evidence is open to some possible or imaginary doubt. "Proof beyond a reasonable doubt" is proof of such character that an ordinary person *would be willing to rely and act upon it in the most important of his own affairs.*

(emphasis added). Thomas' counsel made a timely objection to this instruction at trial and objected to this instruction in the habeas proceedings below. On appeal, Thomas argues that use of the cited statutory definition of "proof beyond a reasonable doubt" establishes a lower threshold or standard of proof than that required by the Due Process Clause.

Although the Supreme Court in *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368 (1970), held that the Due Process Clause requires that criminal convictions be based on "proof beyond a reasonable doubt of every fact necessary to constitute the crime," the Court has never expressly defined this standard. Objections to the "willing to act" language found above have been raised in numerous jurisdictions, but while several courts have criticized certain portions of the instruction, it has never to our knowledge provided a basis for habeas relief.

In denying Thomas' petition, the district judge relied primarily on *Holland v. United States,* 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1954). In *Holland,* the Supreme Court considered a charge which defined reasonable doubt as "the kind of doubt ... which you folks in the more serious and important affairs of your own lives might be willing to act upon." 348 U.S. at 140, 75 S.Ct. at 139. The Supreme Court stated that "the charge should have been in terms of the kind of doubt that would make a person hesitate to act ... rather than the kind on which he would be willing to act." *Id.* The

---

**1.** *Thomas v. Arn,* No. C79–1300 (N.D.Ohio Jan. 15, 1981). The facts as reported in the opinion of the Court of Appeals of Ohio, Eighth District vary somewhat from those cited in the text. According to that opinion Reginald Woodland testified that at about 7:00 a.m. he hit the appellant across the face once because she was pulling his coat. He then testified that he apol-

ogized and sat with the appellant for awhile before leaving to buy cigarettes. When he returned to the house at approximately 9:30 or 10:00 a.m. he answered a telephone and was shot in the foot by the appellant as he spoke on the phone. We point this out merely to illustrate that there was some dispute in the testimony before the Ohio jury.

Court held, however, that the construction "was not of the type that could mislead the jury into finding no reasonable doubt when in fact there was some." *Id.* "Taken as a whole," the Court decided that "the instructions correctly conveyed the concept of reasonable doubt to the jury." *Id.*[2]

The *Holland* opinion does not deal with the precise problem facing this court in that it considers "reasonable doubt" rather than "proof beyond a reasonable doubt." It is, however, sufficiently analogous to provide guidance, and is significant for its demonstration of the Court's determination to consider jury instructions "as a whole."

The "willing to act" language found in the Ohio jury instruction above has been disapproved by numerous courts. In *Scurry v. United States,* 347 F.2d 468 (D.C.Cir. 1965), Judge Skelly Wright considered a charge very similar to the Ohio instruction: "[i]n order to establish proof beyond a reasonable doubt, the evidence must be such that you would be willing to act upon it in the more important affairs of your own life." 347 F.2d at 470. Citing *Holland,* the court stated that this charge was "not in accord with the law," and then discussed the dangers of the "willing to act" charge:

> Being convinced beyond a reasonable doubt cannot be equated with being "willing to act ... in the more weighty and important matters in your own affairs." A prudent person called upon to act in an important business or family matter would certainly gravely weigh the often neatly balanced considerations and risks tending in both directions. But, in making and acting on a judgment after so doing, such a person would not necessarily be convinced beyond a reasonable doubt that he had made the right judgment. Human experience, unfortunately, is to the contrary.

*Id.* at 470. Judge Wright stated further that

> there is a substantial difference between a juror's verdict of guilt beyond a reasonable doubt and a person making a judg-

ment in a matter of personal importance to him. To equate the two in the juror's mind is to deny the defendant the benefit of a reasonable doubt.

*Id.*

Notwithstanding its disapproval of the "proof beyond a reasonable doubt" charge, the D.C. Circuit ruled that the concept of reasonable doubt had been adequately conveyed to the jury by the trial court's proper charge as to "reasonable doubt" ("such a doubt as in the graver, more important transactions of life would cause an ordinary and prudent person to hesitate and pause"). *Id.* at 469. Courts which have expressed disapproval of "willing to act" language have invariably ruled that the trial court's charge, taken as a whole, adequately conveyed the concept of reasonable doubt to the jury. *United States v. Baptiste,* 608 F.2d 666 (5th Cir.1979), *cert. denied,* 450 U.S. 1000, 101 S.Ct. 1707, 68 L.Ed.2d 202 (1981); *United States v. Richardson,* 504 F.2d 357 (5th Cir.1974), *cert. denied,* 420 U.S. 978, 95 S.Ct. 1406, 43 L.Ed.2d 659 (1975); *United States v. Restaino,* 369 F.2d 544 (3d Cir.1966); *Scurry v. United States,* 347 F.2d 468 (D.C.Cir.1965), *cert. denied,* 389 U.S. 883, 88 S.Ct. 139, 19 L.Ed.2d 179 (1967).

The above cases involved appellate review of federal district court decisions. Because defendants had not raised their objections below, the appellate courts reviewed the cases according to the plain error standard. Fed.R.Crim.Pro. 52(b). The test for habeas relief from a state conviction is even more difficult to meet than that used in the plain error context:

> The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal. The question in such a collateral proceeding is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process," *Cupp v. Naughten,*

2. The *Holland* discussion of reasonable doubt was cited with approval in *Jackson v. Virginia,*

443 U.S. 307, 317 n. 9, 99 S.Ct. 2781, 2788 n. 9, 61 L.Ed.2d 560.

414 U.S. [141] at 147, [94 S.Ct. 396, 38 L.Ed.2d 368], not merely whether "the instruction is undesirable, erroneous, or even 'universally condemned,'" *id.,* at 146 [94 S.Ct., at 400].

*Henderson v. Kibbe,* 431 U.S. 145, 154, 97 S.Ct. 1730, 1736, 52 L.Ed.2d 203 (1977) (footnote omitted).

We do not find that the instructions here so infected the proceedings. Although we may disapprove of the "willing to act" language,[3] we conclude as have other courts considering such language, that the instructions here, when taken as a whole, adequately convey the concept of reasonable doubt to the jury. For example, the state trial judge advised the jury that the defendant's plea of not guilty had the effect of clothing her with a legal presumption of innocence and that "the presumption of innocence is only overcome when you, as a jury, find the proof to be such as to exclude every reasonable doubt of the guilt of the defendant."

Accordingly, we agree with the district judge that Ohio's statutory definitions of reasonable doubt and proof beyond a reasonable doubt, when read as a whole and taken in the context in which the instructions are presented here, do not offend due process or any other federally guaranteed constitutional right.[4]

## II

Petitioner Thomas' second issue on appeal has received considerable attention both in the Ohio state courts and in the federal courts of this circuit. Thomas asserts that she was denied due process of law when the trial judge refused her attorney's request to instruct the jury that the State must prove the absence of self-defense beyond a reasonable doubt once that defense is raised.[5]

---

3. In order to avoid the problem posed here, Kentucky has adopted a court rule which provides that "the [jury] instructions should not attempt to define the term 'proof beyond a reasonable doubt.'" Apparently this rule was adopted in the belief that the term should be left to the common understanding of the jury, without judicial embellishment. Ky.R.Cr. 9.56(2).

4. The Ohio Supreme Court upheld the constitutionality of Ohio Revised Code § 2901.05(D) in *State v. Nabozny,* 54 Ohio St.2d 195, 375 N.E.2d 784 (1978). The government has also cited one unpublished order of our court, *Dumbach v. Overberg,* 659 F.2d 1080 (6th Cir.1981), which rejected similar attacks upon this Ohio statute, with one judge dissenting.

5. We reproduce in this footnote the instructions given regarding self-defense by the state trial judge. We do so not because we especially approve of the instructions, but because the language used is necessary to an understanding of our decision. The charge read:

Ladies and gentlemen, the defendant in this case has raised the issue of self-defense, and you must determine, you must listen to the elements of self-defense. You have the responsibility of determining whether or not this defense raised by the defendant justifies the conduct with which she is charged.

If a person is assaulted by another, who apparently intends to kill or cause great bodily harm, the person assaulted is not required to retreat, but may repel force with force and may kill his assailant if it reasonably appears to the defendant to be necessary to do so.

To constitute self-defense there must have been on the part of the defendant a careful use of his faculties and reasonable grounds to honestly believe that there was immediate danger to his person or to his life. There must have been a sufficient act, coupled with an apparently present ability to carry it out, to cause the defendant to reasonably believe that the other party intended to kill or to do her great bodily harm, and that the shooting in this case was necessary to save herself from death or great bodily harm.

If the defendant had reasonable grounds and an honest belief that she was in imminent danger of death or great bodily harm and that the only means of escape from such danger was by injuring her assailant, then she was justified even though she might have been mistaken as to the existence of such danger.

Resort to the use of a deadly weapon is not permitted because of mere words. Vile or abusive language, or verbal threats, no matter how provocative do not justify an assault by the use of a deadly weapon.

In determining whether the defendant has reasonable grounds for an honest belief that she was in imminent danger, you must put yourselves in the position of this defendant, with her characteristics, her knowledge or lack of knowledge, and under the circumstances and conditions that surround her at the time. You must consider the conduct of Reginald and determine if his acts and words caused the defendant to reasonably and honestly believe that she was about to be killed or to receive great bodily harm.

The district court judge below rejected Thomas' due process claims, holding that the trial court's charge could not have confused the jury as to the burden of proof on the issue of self-defense because its import was to put the burden on the state. Having reached this conclusion, Judge Lambros observed that it was "unnecessary to reach petitioner's contention that the federal constitution prohibits placing the burden of proving self-defense on the defendants."

Thomas argues before this court that under the United States Constitution Ohio must bear the burden of proof as to self-defense because (1) in Ohio, absence of self-defense is an element of the crime charged here, and is also an element of the lesser included offense of which she was ultimately found guilty and (2) self-defense negates certain elements of the crime charged. At the time of the incident involved here (February 1977), Ohio's burden of proof statute, Ohio Rev.Code § 2901.05(A), read as follows:

> Every person accused of an offense is presumed innocent until proven guilty beyond a reasonable doubt, and the burden of proof is upon the prosecution. The burden of going forward with an affirmative defense is upon the accused.[6]

■ Self-defense is an affirmative defense in Ohio. *State v. Robinson,* 47 Ohio St.2d 103, 351 N.E.2d 88 (1976); *State v. Seliskar,* 35 Ohio St.2d 95, 298 N.E.2d 582, 583 (1973). *See also State v. Humphries,* 51 Ohio St.2d 95, 364 N.E.2d 1354 (1977) and

> The law does not measure nicely the degree of force which may be used to repel an assault. However if a person who is assaulted used more force than reasonably appears to be necessary under the circumstances, and if the force used is so grossly disproportionate to his apparent danger as to show revenge or an evil purpose to injure the assailant, then the defense of self-defense is not available.

6. In 1978 Ohio amended § 2901.05(A) and readopted the old common law rule that a defendant must prove an affirmative defense by a preponderance of the evidence. This amendment has no effect on this case.

*State v. Poole,* 33 Ohio St.2d 18, 294 N.E.2d 888 (1973). The trial court's refusal to employ defendant's suggested charge—which explicitly placed the burden of disproving self-defense on the state—was in accord with Ohio law. In *State v. Abner,* 55 Ohio St.2d 251, 379 N.E.2d 228 (1978), the Supreme Court of Ohio held that where a defendant has presented evidence sufficient to raise the defense of self-defense, "it is not error for a trial court to refuse a jury instruction that the state must prove beyond a reasonable doubt that the defendant did not act in self-defense." *Id.* The court stated that where self-defense is raised the trial court need not "speak of the burden of proof other than to explain the prosecution's burden of proving guilt beyond a reasonable doubt." 379 N.E.2d at 229. This rule was reaffirmed in *State v. Robinson,* 47 Ohio St.2d 103, 351 N.E.2d 88, 94–95 (1976) and in *State v. Gideons,* 52 Ohio App.2d 70, 368 N.E.2d 67, 71 (1977). The United States Supreme Court, citing *Abner,* recognized that Ohio does not require its courts to give explicit instructions concerning the prosecution's duty to negate self-defense beyond a reasonable doubt. *Engle v. Isaac,* 456 U.S. at 120 n. 20, 102 S.Ct. at 1567 n. 20.

The instructions given, therefore, fully complied with Ohio Supreme Court case law. Moreover, that court has held that such instructions adequately place the burden of disproving self-defense on the state. Thus, Justice Stern observed in his opinion [7] in *State v. Robinson:*

7. The syllabus to *State v. Robinson* provides:

> In a criminal case involving the affirmative defense of self-defense, the defendant has only the burden of going forward with evidence of a nature and quality sufficient to raise that defense, and does not have the burden of establishing such defense by a preponderance of the evidence.

The rule in Ohio is that the precedent in each case is to be found in the syllabus rather than in the text of the opinion. This rule has existed in some form for over 100 years. *Cassidy v. Glossip,* 12 Ohio St.2d 17, 231 N.E.2d 64 (1967).

The state contends that this statute is only a partial codification of a principle of common law, and that the defendant retains the common law burden of proving self-defense by a preponderance of the evidence. We cannot agree with that contention. The assignment of the burden of going forward with evidence of an affirmative defense has acquired a well-recognized meaning in American jurisprudence, and there can be no substantial doubt that the General Assembly intended to adopt the majority rule. Every party who bears the burden of proof on an issue in the sense of the burden of persuasion, necessarily also bears the burden of going forward with the evidence, for the party will lose on that issue unless evidence is presented. If the General Assembly had wished to impose the burden of persuasion as well as the burden of going forward with the evidence, we may properly assume that they would have used language appropriate to do so. They could simply have provided that the defendant has the same burden of proof of affirmative defenses as the state has of making out a prima facie case, but they did not do so.

*The obvious meaning of R.C. 2901.05(A) is that the state bears the burden of proof beyond a reasonable doubt through the trial, and that the burden does not shift to the defendant.* In order to raise an affirmative defense, which is now statutorily defined as either "a defense expressly designated as affirmative" or "a defense involving an excuse or justification peculiarly within the knowledge of the accused, on which he can fairly be required to adduce supporting evidence" (R.C. 2901.05[C]), evidence of a nature and quality sufficient to raise the issue must be introduced, from whatever source the evidence may come. The procedural steps to be taken by the trial court are well stated in *State v. Millett, supra* (273 A.2d [504] at 508): " * * * When such evidence is forthcoming the trial court must first, viewing that evidence in the light most favorable to the defendant determine whether or not it is adequate to raise the self-defense issue, and, if believed, would under the legal tests applied to a claim of self-defense permit a reasonable doubt as to guilt, stemming from that claim, to arise. *Having concluded as a matter of law that the self-defense issue is thus properly tendered, the trial court need only instruct the jury as to the elements of self-defense. He will have no occasion to speak of burden of proof other than to explain the State's burden of proving guilt beyond a reasonable doubt.* If the evidence adduced, so viewed, is legally insufficient to raise the issue, the trial court will have no occasion or obligation to instruct the jury on the elements essential to a valid claim of self-defense, but rather will remove the issue of self-defense from jury consideration."

351 N.E.2d at 93–95 (emphasis added) (footnotes omitted).

The Ohio Supreme Court's position was further clarified in *State v. Abner,* 55 Ohio St.2d 251, 379 N.E.2d 228. After referring to the court's earlier ruling in *Robinson,* Justice Herbert writing for the majority held:

Once the affirmative defense of self-defense has been properly raised, the trier of fact must consider it and all the evidence in the case and if, after so doing, the trier entertains a reasonable doubt of the defendant's guilt he must be acquitted. On the other hand, if the trier of fact considers all of the evidence in the case, including the properly raised affirmative defense of self-defense, and entertains no reasonable doubt of the defendant's guilt, he must be convicted. *State v. Chase* (1978), 55 Ohio St.2d 237, 378 N.E.2d 1064. Therefore, where the defendant has gone forward with evidence of a nature and quality sufficient to raise the defense of self-defense, it is not error for a trial court to refuse a jury instruction that the state must prove beyond a reasonable doubt that the defendant did not act in self-defense.

379 N.E.2d 229–30. The court in *Abner* further observed that the trial court's in-

struction that the defendant "has the obligation of raising the [self-defense] issue, and [of] going forward with sufficient evidence to convince . . . [the jury] . . . that it [is] a valid defense," was correct as to defendant's duty to raise the defense but erred in placing on defendant the burden of proving self-defense.[8]

Great deference is due the judgment of Ohio's highest court on interpretation of an Ohio statute, and certainly we ought not to base a contrary ruling merely on a difference in semantics. Whether or not this instruction placed the burden on the government, however, analysis of the principal Supreme Court cases in this area of law reveals that this petitioner had no constitutional right to an instruction placing the burden of disproving self-defense on the government.

In *Engle v. Isaac,* 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982), the Supreme Court observed that a claim that the State could not constitutionally place the burden of proving self-defense on defendants presented a "colorable constitutional claim." *Id.,* 102 S.Ct. at 1568.[9] The Supreme Court noted that "Ohio punishes only actions that are voluntary, Ohio Rev.Code Ann. § 2901.-21(A)(1) (1975), and unlawful, *State v. Simon,* No. 6262, p. 13 (Ct.App. Montgomery County, Ohio, Jan. 16, 1980), modified on reconsideration (Jan. 22, 1980)." *Id.* Like Thomas, Isaac argued that self-defense negates these elements of criminal behavior,

and contended that the State must disprove self-defense "as part of its task of establishing guilty *mens rea,* voluntariness, and unlawfulness." 102 S.Ct. at 1568. Since the Supreme Court ruled that *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977) precluded Isaac's appeal, however, the only Supreme Court comment we have on Isaac's due process argument is that it presented a "colorable" and "at least a plausible" constitutional claim. 102 S.Ct. at 1568, 1569.

The underlying substantive issue here is *not,* as it was in *Isaac,* whether the state might constitutionally thrust the burden of proving self-defense upon the defendant. Contrary to the facts in *Isaac,* there was no instruction to that effect in this case. The issue here is limited to whether the state trial court was required by the Constitution to instruct the jury explicitly that the government bore the burden of disproving self-defense by proof beyond a reasonable doubt. We conclude that the relevant Supreme Court cases do not require such an instruction here. *In Re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975); *Patterson v. New York,* 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977).

*In Re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368 (1970), established that the prosecution must prove beyond a reasonable doubt every fact neces-

---

8. The syllabus in *State v. Abner* states:

    Where, in a criminal case, the defendant has gone forward with evidence of a nature and quality sufficient to raise the defense of self-defense, it is not error for a trial court to refuse a jury instruction that the state must prove beyond a reasonable doubt that the defendant did not act in self-defense.

    For the effect of the language in the syllabus see n. 7, *supra.*

9. *Engle v. Issac,* 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982), differs factually in two important respects from this case. In both cases the Ohio petitioner was accused of felonious assault and convicted of the lesser included offense of aggravated assault, 102 S.Ct. at 1564, but in *Isaac,* the state trial court instructed the jury that Isaac bore the burden of proving self-defense by a preponderance of the evi-

dence, whereas here no such instruction was given. The second important difference between these cases is that the petitioner here made a specific contemporaneous objection at trial whereas in *Isaac* no such objection was made. Under Ohio's contemporaneous objection rule, Isaac's procedural default waived his due process claims against the jury charge. On habeas corpus review, the United States Supreme Court held that Isaac's failure to comply with Ohio's contemporaneous objection rule, and his inability to demonstrate cause for this procedural default, barred him from asserting his due process claims under the federal habeas corpus statute, 28 U.S.C. § 2254. *Id.,* 102 S.Ct. at 1575; *see Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). The Court, therefore, did not reach the merits of Isaac's case.

sary to constitute the crime charged. Maggie Thomas argues that the absence of self-defense is an element of the crime charged. If she is correct, *Winship* requires the prosecution to prove absence of self-defense beyond a reasonable doubt. In *Isaac,* however, the Supreme Court held that Ohio could "assume the burden of disproving an affirmative defense without also designating absence of the defense an element of the crime." 102 S.Ct. at 1567. The Court declared that "the structure of Ohio's Code suggests simply that the State decided to assist defendants by requiring the prosecution to disprove certain affirmative defenses." *Id.* at 1567–68. The Court found no "concrete evidence" that Ohio intended to include the absence of self-defense as an element of the crime charged.[10] Petitioner acknowledges in her supplemental brief, filed after *Isaac,* that the Supreme Court rejected her argument that the absence of self-defense is an element of the crime charged. Since *Isaac* rejects petitioner's contention that the absence of self-defense is an element of the crime charged, this case falls outside the *Winship* rule. The question thus becomes whether self-defense negates any element of the crime of which Thomas was convicted.

In *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), the Supreme Court considered a Maine rule which required a defendant charged with murder to prove that he acted in the heat of passion on sudden provocation in order to reduce the charge to manslaughter. Because malice aforethought was an essential element of murder under Maine law, the court held that to require the defendant to negate that element by proving a heat of passion de-fense violated the *Winship* rule that the prosecution bears the burden of proof on all elements of the offense. *Mullaney* deals only with the government's burden to prove all elements of a crime. We must consider under what circumstances the burden of disproving affirmative defenses, such as self-defense, is constitutionally required to be placed upon the government.

In our view, *Patterson v. New York,* 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977), is the Supreme Court case most analogous to this appeal.[11] In *Patterson,* the Supreme Court considered a New York statute which required a defendant charged with second degree murder to prove by a preponderance of the evidence the affirmative defense of extreme emotional disturbance in order to reduce the murder charge to manslaughter. The Court first determined the elements of murder in New York —death, intent to kill, and causation—and then considered whether the extreme emotional disturbance defense negated any of these elements. 432 U.S. at 205–07, 97 S.Ct. at 2324–2325.

Upholding the New York statute, the Supreme Court emphasized that the emotional disturbance defense did not "negative any facts of the crime which the State ... [must] prove in order to convict of murder." 432 U.S. at 207, 97 S.Ct. at 2325. Therefore, the New York statute did not unconstitutionally shift to defendants the burden of disproving any fact essential to the crime charged; the defense bore "no direct relationship to any element of murder." 432 U.S. at 201, 97 S.Ct. at 2322. The Court reiterated that "the Due Process Clause requires the prosecution to prove beyond a

---

**10.** The *Isaac* Court thus rejected the reasoning of *Bell v. Perini,* 635 F.2d 575 (6th Cir.1980), cited by Thomas. In *Bell,* this circuit stated that Ohio had assumed the burden of proving the absence of self-defense, and that placing the burden as to self-defense on defendants was equivalent to placing the burden of proving the absence of an element of the crime on defendants. *Isaac* clearly rejects this assertion. 102 S.Ct. at 1567.

**11.** In *Hankerson v. North Carolina,* 432 U.S. 233, 97 S.Ct. 2339, 53 L.Ed.2d 306 (1977) the Supreme Court raised but left undecided the issue presently before this court:

> The State does *not* argue as an alternative ground in support of the judgment below, that despite *Mullaney v. Wilbur,* it is constitutionally permissible for a State to treat self-defense as an affirmative defense that the prosecution need not negative by proof beyond a reasonable doubt. Therefore, we do not address that issue in this case.

432 U.S. at 240 n. 6, 97 S.Ct. at 2344 n. 6.

reasonable doubt all of the elements included in the definition of the offense of which the defendant is charged." *Id.* at 210, 97 S.Ct. at 2327. "Proof of the non-existence of all affirmative defenses has never been constitutionally required," however, and the Court refused to apply such a rule to this statutory defense. *Id.*

To support its decision, the Court cited *Leland v. Oregon,* 343 U.S. 790, 72 S.Ct. 1002, 96 L.Ed. 1302 (1952), upholding an Oregon statute which required defendants to prove insanity beyond a reasonable doubt. *Patterson,* 432 U.S. at 205–07, 97 S.Ct. at 2324–2325. *Patterson* makes clear that *Mullaney* did not overrule *Leland:*

> We are unwilling to reconsider *Leland*
> .... But even if we were to hold that a State must prove sanity to convict once that fact is put in issue, it would not necessarily follow that a State must prove beyond a reasonable doubt every fact, the existence or non-existence of which it is willing to recognize as an exculpatory or mitigating circumstance affecting the degree of culpability or the severity of the punishment.

*Id.* at 207, 97 S.Ct. at 2325. The Court then observed that there are a host of other defenses which may mitigate or exculpate but do not negate an element of the crime, and that states may place the burden on defendants to prove these mitigatory or exculpatory facts. *Id.* at 209–10, 97 S.Ct. at 2326–2327.

*Patterson* establishes that a State is not bound to disprove beyond a reasonable doubt every "exculpatory or mitigating circumstance affecting the degree of culpability or the severity of the punishment." 432 U.S. at 207, 97 S.Ct. at 2325. The proper inquiry, under *Patterson* and *Mullaney,* is whether the defense at issue negates any facts of the crime which the State must prove in order to convict. *Id.* If the defense in question does not negate any element of the crime charged, the State may properly place the burden of proof as to the defense on the defendant.

One factor important to the decisions in *Patterson v. New York* and *Leland v. Ore-*

*gon* was that the defense in question constituted an issue separate and apart from the elements of the crime charged. The jurors in *Leland* were instructed to "consider separately the issue of legal sanity *per se*—an issue set apart from the crime charged, to be introduced by a special plea and decided by a special verdict." 343 U.S. at 795–96, 72 S.Ct. at 1005–1006. Similarly in *Patterson,* the affirmative defense of extreme emotional disturbance was a "separate issue," 432 U.S. at 207, 97 S.Ct. at 2325, and was designed to enter the jury's consideration only after the State established the elements of murder—*i.e.,* death, intent to kill, and causation—beyond a reasonable doubt. *Id.* at 206, 97 S.Ct. at 2325. If a mitigating or exculpating defense is considered after the elements of the offense are established beyond a reasonable doubt, *Patterson* and *Leland* suggest that the burden of proving this defense may be placed on defendants. *See Mullaney v. Wilbur,* 421 U.S. at 684, 95 S.Ct. at 1882 (Rehnquist, J., concurring).

In light of the standards set by *Patterson* and *Mullaney,* analysis of Thomas' due process arguments must begin with a determination of the elements which constitute the crimes of felonious assault and aggravated assault.

Ohio Rev.Code § 2903.11, *Felonious assault,* provides:

(A) No person shall knowingly:

(1) Cause serious physical harm to another;

(2) Cause or attempt to cause physical harm to another by means of a deadly weapon or dangerous ordnance as defined in section 2923.11 of the Revised Code.

(B) Whoever violates this section is guilty of felonious assault, a felony of the second degree.

As noted earlier, Thomas was found innocent of this charge, but was convicted of the lesser included crime of aggravated assault, Ohio Rev.Code § 2903.12, which provides:

(A) No person, while under extreme emotional stress brought on by serious provocation reasonably sufficient to incite him into using deadly force, shall knowingly:

(1) Cause serious physical harm to another;

(2) Cause or attempt to cause physical harm to another by means of a deadly weapon or dangerous ordnance as defined in section 2923.11 of the Revised Code.

(B) Whoever violates this section is guilty of aggravated assault, a felony of the fourth degree.

The elements of these crimes appear to be:

1. knowingly

2. causing physical harm to another person.

Thomas' offense falls under paragraph (2) of each offense because she caused physical harm with a deadly weapon. The two offenses are identical except that evidence of provocation allows the jury to reduce felonious assault to the lesser included crime of aggravated assault in much the same way the New York statute in *Patterson* permitted a finding of manslaughter instead of murder where "extreme emotional disturbance" existed. Ohio courts have held that proof of these crimes "is complete on proof that a person (1) knowingly (2) caused serious physical harm to another." *State v. Butler,* 44 Ohio App.2d 177, 337 N.E.2d 633 (1974).[12]

The next question, under the *Patterson* analysis, is whether self-defense negates an element of the crime of aggravated assault. The statutory crime of aggravated assault as read literally and as interpreted by Ohio courts consists of the two elements listed above: knowledge and causing physical harm to another. Since a theory of self-defense does not negate either of these elements, under *Patterson* an Ohio trial court may place the burden of proving self-defense on the defendant, or refuse to give any instruction on the burden of proof as to self-defense.

Petitioner Thomas argues that the crime of aggravated assault consists of more than the two elements listed above. In her brief, petitioner lists several elements which she claims are included in the crime of aggravated assault. Among these alleged elements, which Thomas claims are negated by self-defense, are criminal intent, a "voluntary act" requirement, an unlawfulness requirement, and a requirement that the indictment allege that the act was against the "peace and dignity of the State of Ohio." If indeed these factors are elements of the crime alleged, and if self-defense negates any of them, *Patterson* requires the prosecution to disprove self-defense.

Thomas first argues that criminal conduct is an element of aggravated assault. She is mistaken. Under Ohio law aggravated assault *is* criminal conduct *unless* it is excused or justified by an affirmative defense such as self-defense. Self-defense does not negate an element of aggravated assault; instead it excuses and makes non-criminal an act which would otherwise be criminal.

Thomas next argues that self-defense negates criminal intent. The petitioner cites no Ohio Supreme Court authority to support this proposition, but does cite a decision of an Ohio appeals court, *State v. Clifton,* 32 Ohio App.2d 284, 290 N.E.2d 921 (1972), and the concurring opinion in another appeals court decision, *State v. Robinson,* 48 Ohio App.2d 197, 356 N.E.2d 725 (1975) (Whiteside, J., concurring), *aff'd,* 47 Ohio St.2d 103, 351 N.E.2d 88 (1976). The Ohio Court of Appeals stated in *Clifton* that one who kills in self-defense lacks the *mens rea* "that otherwise would render him culpable of the homicide," 290 N.E.2d at 923, and a concurring opinion in *Robinson* states generally that the existence or non-existence of self-defense bears a "direct relationship" to the required mental elements of crimes. 48

**12.** Provocation is not an element of aggravated assault. Rather, when the State charges aggravated assault, "such charge constitutes an admission by the State that provocation as defined therein existed at the time of the alleged offense and that such provocation absolves the defendant of the guilt of felonious assault as defined by [Ohio] R.C. 2903.11 which he would have without such provocation." *State v. Butler,* 44 Ohio App.2d 177, 337 N.E.2d 633, 638 (1974). Similarly the jury may reduce a felonious assault charge to aggravated assault where evidence of provocation is offered.

Ohio App.2d 197, 209, 356 N.E.2d 725, 732 (1975) (Whiteside, J., concurring).

■ Whatever the validity of the above statements under Ohio Supreme Court law, it is clear that self-defense does not negate the mental state required to establish the crime of aggravated assault. Aggravated assault (as well as felonious assault) requires that the accused act "knowingly." "Knowingly" is defined in Ohio Rev.Code § 2901.22(B):

### Culpable Mental States

A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result . . . .

A person may act "knowingly" and still act in self-defense. Self-defense does not negate the mental element required to prove aggravated assault.[13] Self-defense, in fact, bears no relationship to the mental element necessary to establish aggravated assault in Ohio.[14]

13. In *Hooper v. Perini,* 641 F.2d 445 (6th Cir. 1981), we held that self-defense negates the malice element of Ohio's second degree murder offense. Here, however, the offense is aggravated assault, and conviction of that offense does not require proof of malice. *United States v. Corrigan,* 548 F.2d 879 (10th Cir.1977), cited by petitioner for the proposition that under federal law self-defense negates criminal intent, is also irrelevant. The issue here is whether under Ohio law self-defense negates an element of aggravated assault.

14. Petitioner states that the Ohio Legislature has evidenced an intent to continue the traditional common law approach to *mens rea,* "for the Legislative Service Commission Note to R.C. 2901.22 indicates that a requirement for conviction is that there be a 'blameworthy' mental state—a 'guilty state of mind.'" (This statement is actually found in the note following Ohio Rev.Code § 2901.21). The "guilty" and "blameworthy" states of mind required to convict, of course, are specified in § 2901.22, and under this statute knowledge of the probable result of one's conduct is sufficient to establish aggravated assault. Although a person claiming to have acted in self-defense may not literally have a "guilty" or "blameworthy" state of mind, he may very well have knowledge of the probable results of his actions, and this mental state is sufficient to convict for aggravated assault.

Thomas also argues that self-defense negates the "voluntary act" requirement for criminal liability found in Ohio Rev.Code § 2901.21(A). Ohio's "voluntary act" requirement is defined negatively—*i.e.,* the Code states what actions are involuntary. Ohio Rev.Code § 2901.21(C) provides that reflexes, convulsions and similar bodily movements are involuntary. Thomas fails to cite any authority for her contention that self-defense negates the "voluntary act" requirement, and we find no support for this claim in Ohio case law. Although Thomas refers to *State v. Hardy,* 60 Ohio App.2d 325, 397 N.E.2d 773 (1978), the court there did not address the "voluntary act" requirement, and the excerpt petitioner cites is mere dicta.[15]

Finally, Thomas asserts that unlawfulness is an element of the charged offense, and that self-defense negates this element. Our court dealt with this question in some detail in *Carter v. Jago,* 637 F.2d 449, 456 n. 6 (6th Cir.1980). After a review of Ohio

15. *State v. Hardy,* 60 Ohio App.2d 325, 397 N.E.2d 773 (1978), concerned a defendant charged with having a weapon while under a disability. The defendant had a prior conviction, and was prohibited by Ohio Rev.Code § 2923.13 from knowingly acquiring, having, carrying, or using a firearm. While working in a store, defendant was attacked by another man with a razor. Defendant grabbed for a rifle located under the store's counter, and shot the attacker. Defendant pleaded self-defense, but was convicted of violating § 2923.13. The trial court held that self-defense was not a defense to a charge of violating § 2923.13.

Defendant's conviction was reversed by the Ohio Court of Appeals, which held that defendant was entitled to assert the affirmative defense of self-defense. The court did not refer to Ohio's "voluntary act" requirement, but noted in passing that "a legitimate act of self-defense is much more a reflex action than one committed voluntarily." 397 N.E.2d 776. This passing reference does not convince us that self-defense negates Ohio's "voluntary act" requirement. The holding of the case merely establishes that the defendant was entitled to assert self-defense, and it does not discuss whether self-defense negates any elements of the crime charged.

Similarly, Thomas' claim that self-defense negates the "peace and dignity allegation" required by the Ohio Constitution is not supported by Ohio case law.

law, Judge Celebrezze concluded that in Ohio unlawfulness is not an element of the crime of murder. 637 F.2d at 456 n. 6. Several Ohio cases cited by Thomas state that self-defense excuses or justifies an otherwise unlawful act, but they do not hold that unlawfulness is an element of crimes in Ohio nor do they hold that self-defense negates this unlawfulness element. *See, e.g., State v. Gideons,* 52 Ohio App.2d 70, 74, 368 N.E.2d 67, 71 (1977).

Petitioner cites two cases which support her argument that unlawfulness is an element of the crime charged: *State v. Simon,* No. 6262 (Mont.Cty., Jan. 16, 1980 and Jan. 22, 1980) and *State v. Tuncle,* No. 38424 (Cuy.Cty., March 8, 1979). In *Simon,* however, the language supporting Thomas' position was specifically removed by a supplemental opinion issued January 22, 1980. *Tuncle* appears to be an aberration in Ohio law.

In *Tuncle,* the Ohio Court of Appeals stated that unlawfulness must be proved by the State in a prosecution for voluntary manslaughter, and the court also concluded that self-defense negates this unlawfulness element. These assertions are not supported by Ohio case law.

When Ohio courts list the elements of crimes, unlawfulness is not included in the recitation. *See, e.g., State v. Farmer,* 156 Ohio St. 214, 102 N.E.2d 11 (1952) (lists elements of robbery); *State v. Muscatello,* 57 Ohio App.2d 231, 387 N.E.2d 627 (1977) (lists elements of aggravated murder, murder, and voluntary manslaughter); *State v. Butler,* 44 Ohio App.2d 177, 337 N.E.2d 633 (1974) (lists elements of felonious assault and aggravated assault).[16]

In addition the Ohio Supreme Court has stated that self-defense does not negate elements of Ohio crimes. In *State v. Poole,* 33 Ohio St.2d 18, 294 N.E.2d 888 (1973), Justice Herbert discussed affirmative defenses such as self-defense:

This Court has consistently recognized that there are certain "justification[s] for

admitted conduct" allowed to a defendant in a criminal case, provable for the most part under the plea of not guilty, which are referred to as "affirmative defenses." As characterized by one authority, they represent not a mere denial or contradiction of evidence which the prosecution has offered as proof of an essential element of the crime charged, but, rather, they represent a substantive or independent matter "which the defendant claims exempts him from liability even if it is conceded that the facts claimed by the prosecution are true." Among those defenses in Ohio, are self-defense, duress, insanity, and intoxication.

294 N.E.2d at 889, *citing* McCormick, *Evidence* (2d ed.) 801, and Anderson, 1 *Wharton's Criminal Evidence* (12th ed.), 54 and 55, Section 19. This analysis was approved in *State v. Humphries,* 51 Ohio St.2d 95, 364 N.E.2d 1354 (1977).

The definition of "affirmative defense" found in Ohio Rev.Code § 2901.05(C)(2) likewise supports the proposition that self-defense is a matter separate and independent from the elements of Ohio crimes:

(C) As used in this section, an "affirmative defense" is either of the following:

(1) A defense expressly designated as affirmative;

(2) A defense involving an excuse or justification peculiarly within the knowledge of the accused, on which he can fairly be required to adduce supporting evidence.

This definition does not refer to negations of elements of crimes; instead its use of the terms "excuse" and "justification" strongly implies that a criminal offense has been committed—*i.e.,* that all elements of a crime have been proved beyond a reasonable doubt—and that the perpetrator will be criminally liable unless an "excuse" or "justification" for this conduct is presented.

In our discussion of *Patterson* and *Leland* above, we observed that if an excul-

**16.** Ohio courts may be erroneously interpreting state law, but erroneous decisions by state courts concerning state law do not pose a federal constitutional question. *Engle v. Isaac,* 456 U.S. 107, 121 n. 21, 102 S.Ct. 1558, 1568 n. 21, 71 L.Ed.2d 783 (1982).

patory or mitigatory defense is a "separate issue"—raised only after the prosecution has established the elements of a crime beyond a reasonable doubt—the Supreme Court has declared that the burden of proving this defense may be placed on defendants. Under Ohio law, self-defense does not negate an element of aggravated assault, and proof of self-defense is separate and independent from proof of the elements of aggravated assault. Thus, the *Mullaney* rule is not transgressed by placing the burden of proving self-defense on defendants charged with this crime. Thomas had no due process right to a jury instruction that the State had the burden of disproving self-defense beyond a reasonable doubt. *See Nieb v. Jago,* 695 F.2d 228 (6th Cir.1982) (per curiam); *Carter v. Jago,* 637 F.2d 449 (6th Cir.1980), *cert. denied,* 456 U.S. 980, 102 S.Ct. 2249, 72 L.Ed.2d 856 (1982). *Cf. Krzeminski v. Perini,* 614 F.2d 121 (6th Cir. 1980) (affirmative defense of insanity). Petitioner's argument that self-defense negates an element of the crimes of aggravated and felonious assault was specifically rejected by the Sixth Circuit's plurality opinion in *Isaac v. Engle,* 646 F.2d 1129 (6th Cir.1980) *reversed on other grounds,* 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982):

> The defense of self-defense as defined in the charge to the jury at Isaac's trial does not negate an element of the crime of felonious assault or aggravated assault as such are defined in Ohio Revised Code § 2903.11 and § 2903.12. This is true since one could act knowingly (felonious assault) or knowingly and while under extreme emotional distress brought on by serious provocation reasonably sufficient to incite him into using deadly force (aggravated assault), and yet act in self-defense.

646 F.2d at 1135.

### CONCLUSION

In summary, we hold in Part I of this opinion that although certain language in Ohio's statutory definition of proof beyond a reasonable doubt, Ohio Rev.Code § 2901.-05(D), is subject to criticism, the state trial court's jury instructions here do not violate the *Winship* "reasonable doubt" standard when the instructions are considered as a whole.

We hold in Part II of this opinion that petitioner had no constitutional right to a jury instruction placing the burden of disproving self-defense on the government. Under Ohio law absence of self-defense is not an element of either felonious assault or aggravated assault, and self-defense does not negate any elements of these crimes. Therefore, under *Mullaney* and *Patterson,* the state trial court was not required to instruct the jury that the government had the burden of disproving self-defense.

Affirmed.