RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 12a0342p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

ANTONIO FRANKLIN,

        *Petitioner-Appellant,*

    *v.*

MARGARET BRADSHAW,

        *Respondent-Appellee.*

No. 09-3389

Appeal from the United States District Court
for the Southern District of Ohio at Dayton.
No. 04-00187—Michael R. Merz, Magistrate Judge.

Argued: November 16, 2011

Decided and Filed:  September 19, 2012

Before:  BOGGS, COLE, and GIBBONS, Circuit Judges.

_____

### COUNSEL

**ARGUED:** S. Adele Shank, LAW OFFICE OF S. ADELE SHANK, Columbus, Ohio, for Appellant.  Brenda S. Leikala, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellee.  **ON BRIEF:** S. Adele Shank, LAW OFFICE OF S. ADELE SHANK, Columbus, Ohio, James P. Fleisher, BIESER, GREER & LANDIS, Dayton, Ohio, for Appellant.  Brenda S. Leikala, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellee.

_____

### OPINION
_____

    BOGGS, Circuit Judge.  Antonio Franklin, an Ohio death-row prisoner, appeals a district court judgment denying his petition for a writ of habeas corpus.  *See* 28 U.S.C. § 2254.  The district court granted a certificate of appealability (COA) on nine claims. The first claim actually consists of two related, yet distinct, subclaims.  Thus, there are ten claims presented on appeal.  First, Franklin claims that the trial court erred at the

1

pretrial competency hearing in determining that he was competent.  Second, Franklin argues that he was tried while incompetent. Third, Franklin asserts that the trial court erred in not ordering *sua sponte* a second competency hearing after the start of the trial. Fourth, Franklin claims that trial counsel were ineffective for failing to request a second competency hearing.  Fifth, Franklin asserts that the trial court abused its discretion by denying a continuance after one of his arson experts died before testifying  at trial. Sixth, Franklin claims that his execution would constitute cruel and unusual punishment because he committed the crimes when he was mentally ill.    Seventh and eighth, Franklin asserts that his execution would violate his Equal Protection and Due Process Rights because he committed his crimes when he was mentally ill.  Ninth, Franklin asserts that the definition of "reasonable doubt" given in the guilt-phase jury instructions was constitutionally inadequate.  Tenth, Franklin argues that the trial court erred in admitting gruesome photographs.  We affirm the district court's judgment.

# I

## A

On April 18, 1997, nineteen-year-old Antonio Franklin killed his grandmother, grandfather, and uncle.  Franklin shot his grandmother in the head and beat her in the head, probably with a baseball bat.  Franklin beat his uncle in the head with a baseball bat.  Franklin beat his grandfather in the back of his head with some object other than a baseball bat.  After these attacks, Franklin set the house on fire and left the three to die. His grandmother died of either the gunshot wound or her blunt-force injuries.  His grandfather and uncle died of a combination of blunt-impact injuries and smoke inhalation.  Franklin fled from this grisly scene in his grandfather's car, taking with him his grandfather's gun and his grandmother's jewelry.

## B

Franklin was charged in a 17-count indictment with nine counts of aggravated arson, two counts of aggravated robbery, and six counts of aggravated murder that reflected the two ways that each of the three killings could be classified:  prior-

calculation-and-design murder and felony murder. A firearm specification was attached to one of the aggravated robberies and two of the aggravated murders—the three crimes committed against Franklin's grandmother. Four death specifications were attached to each aggravated murder: murder for the purpose of escaping detection, apprehension, trial, or punishment for another offense ("escaping-detection" specification); murder during commission of aggravated robbery ("aggravated-robbery" specification); murder during commission of aggravated arson ("aggravated-arson" specification); and murder as part of a course of conduct involving the purposeful killing of two or more persons ("mass-murder" specification). Franklin pleaded not guilty by reason of insanity and claimed incompetence to stand trial.

The trial court found him competent at a pretrial competency hearing but dismissed two of the aggravated-arson charges. The jury found Franklin guilty of the remaining 15 counts (seven aggravated arsons, two aggravated robberies, and six aggravated murders) and all attached specifications. The jury recommended a sentence of death. Agreeing with the jury, the trial court sentenced Franklin to death and 91 years of imprisonment. The trial court overruled Franklin's motion for a new trial.

On direct appeal, the Ohio Supreme Court merged the escaping-detection aggravator into the aggravated-robbery and aggravated-arson aggravators ("the felony-murder aggravators"), then independently reweighed aggravation and mitigation before determining that death was indeed the appropriate sentence. The court otherwise affirmed. *State v. Franklin*, 776 N.E.2d 26 (Ohio), *reh'g denied*, 780 N.E.2d 288 (Ohio 2002), *cert. denied*, 539 U.S. 905 (2003).

Franklin unsuccessfully sought relief via post-conviction proceedings.[1] In 2004, Franklin filed a federal habeas corpus petition raising 51 claims. The district court denied the petition and dismissed it with prejudice but granted a COA on the nine claims at issue here: claims 1, 2, 14, 22, 30, 31, 32, 34, and 45 (claim 1 has two subparts). *Franklin v. Bradshaw*, No. 3:04-cv-187, 2009 WL 649581 (S.D. Ohio Mar. 9, 2009). Franklin timely appealed.

## C

Franklin filed his federal petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), whose standards therefore govern. *See Lindh v. Murphy*, 521 U.S. 320, 326–27 (1997). District court rulings on legal questions and mixed questions of law and fact are reviewed *de novo*. *Lucas v. O'Dea*, 179 F.3d 412, 416 (6th Cir. 1999). This *de novo* review does not extend, however, to the state court's conclusions. A federal court may not grant habeas relief on any claim adjudicated on the merits in state court unless the adjudication resulted in a decision that: (1) was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court; or (2) was based on an unreasonable determination of the facts in light of the evidence presented to the state courts. *See* 28 U.S.C. § 2254(d). In analyzing whether a state-court decision is contrary to or an unreasonable application of clearly established Supreme Court precedent, a federal court may look only to the holdings of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

A state-court decision on the merits is contrary to clearly established Supreme Court precedent only if the reasoning or the result of the decision contradicts that

---

[1] *See State v. Franklin*, No. 97-CR-1139 (Montgomery C.P. Aug. 23, 2001), *aff'd*, No. 19041, 2002 WL 1000415 (Ohio Ct. App. May 17, 2002) (unpublished), *juris. denied*, 782 N.E.2d 77 (Ohio 2003), *reh'g denied*, 804 N.E.2d 37 (Ohio 2004); pro se successor post-conviction proceedings, *State v. Franklin*, No. 97 CR 1139 (Montgomery C.P. Aug. 27, 2004), *aff'd*, No. 20716, 2005 WL 678925 (Ohio Ct. App. Mar. 25, 2005) (unpublished), *juris. denied*, 830 N.E.2d 1170 (Ohio 2005), *cert. denied*, 546 U.S. 1179 (2006), *State v. Franklin*, No. 19041 (Ohio Ct. App. Sept. 22, 2005), *juris. denied*, 842 N.E.2d 1054 (Ohio), *cert. denied*, 549 U.S. 878 (2006); pro se *Murnahan* motions (Ohio's vehicle for bringing appellate-counsel-ineffectiveness claims, *State v. Murnahan*, 584 N.E.2d 1204, ¶ 2 (Ohio 1992)), *State v. Franklin*, No. 98-2061 (Ohio Mar. 19, 2003), *State v. Franklin*, No. 98-2061 (Ohio Aug. 4, 2004).

precedent. *Early v. Packer*, 537 U.S. 3, 8 (2002). A federal court may grant habeas relief under the unreasonable-application clause if the state-court decision: (1) identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies it to the facts; or (2) either unreasonably extends or unreasonably refuses to extend a legal principle from Supreme Court precedent to a new context. *Williams*, 529 U.S. at 407–08. To violate the unreasonable-application clause, the state-court application of Supreme Court precedent must have been "objectively unreasonable," not simply erroneous or incorrect. *Id*. at 409–11. State-court factual findings are presumed correct unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## II

Franklin raises four variations on the argument that he was not competent to be tried. First, he asserts that at the pretrial competency hearing, the trial court erred in determining that he was competent (Subclaim 1(a)). Second, he claims that at the actual trial, he was incompetent (Subclaim 1(b)). Third, he argues that the trial court erred in not *sua sponte* ordering a second competency hearing (Claim 2). Fourth, he claims that trial counsel were ineffective in failing to request a second competency hearing (Claim 14). Each claim is without merit.

## A

"A criminal defendant may not be tried unless he is competent." *Godinez v. Moran*, 509 U.S. 389, 396 (1993). The standard for competence to stand trial is whether the defendant has: (1) sufficient present ability to consult with a lawyer with a reasonable degree of rational understanding; and (2) a rational and factual understanding of the proceedings against him. *Id*. at 396. The due-process right to a fair trial is violated by a court's failure to hold a proper competency hearing where there is substantial evidence of a defendant's incompetency. *Pate v. Robinson*, 383 U.S. 375, 385–86 (1966). "[E]vidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial are all relevant in

determining whether further inquiry is required, but . . . even one of these factors standing alone may, in some circumstances, be sufficient." *Drope v. Missouri*, 420 U.S. 162, 180 (1975). On review, this court must determine whether a reasonable judge, situated as was the trial judge, should have doubted the defendant's competency. *Williams v. Bordenkircher*, 696 F.2d 464, 467 (6th Cir. 1983); *see also Filiaggi v. Bagley*, 445 F.3d 851, 859 (6th Cir. 2006).

A state-court determination of competence is a factual finding, to which deference must be paid. *Thompson v. Keohane*, 516 U.S. 99, 108–11 (1995). "[R]egardless of whether we would reach a different conclusion were we reviewing the case de novo, the findings of the state court must be upheld unless there is clear and convincing evidence to the contrary." *Clark v. O'Dea*, 257 F.3d 498, 506 (6th Cir. 2001) (applying 28 U.S.C. § 2254(e)(1)); *see also Wood v. Allen*, 130 S. Ct. 841, 849 (2010) (stating that as for 28 U.S.C. § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance"). And that deference must be paid even to state-court factual findings made on appeal. *See Rushen v. Spain*, 464 U.S. 114, 120 (1983); *Sumner v. Mata*, 449 U.S. 539, 546–47 (1981). "Further, the Supreme Court has very recently made abundantly clear that the review granted by AEDPA is even more constricted than AEDPA's plain language already suggests." *Peak v. Webb*, 673 F.3d 465, 472 (6th Cir. 2012). "[S]o long as fairminded jurists could disagree on the correctness of the state court's decision," relief is precluded under AEDPA. *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011) (internal quotation marks omitted).

**B**

On May 21, 1998, the trial court held a competency hearing. Eugene S. Cherry, Ph.D., testified as an expert witness for the defense, and Thomas O. Martin, Ph.D., testified as an expert witness for the State. Dr. Cherry testified that Franklin suffered from paranoid schizophrenia, had been both paranoid and delusional since about eight months before the murders, and was presently incompetent to stand trial. Dr. Martin, by contrast, testified that Franklin was not mentally ill and was competent.

Roughly two weeks later, tracking, but not citing, the test from *Moran*, the trial court found Franklin competent:

> The law presumes that Defendant is competent to stand trial (2945.37(G)). The Defendant has not overcome this presumption by a preponderance of the evidence[,] *and the Court finds he is capable of advising his attorneys in his own defense, does understand the nature and objectives of the proceedings against him and is therefore, competent to stand trial*.

(emphasis added).

On August 6, 1998, two-and-a-half months after the competency hearing, trial began. According to Franklin, his condition had deteriorated, and it is apparent from the videotape of the trial that he was not visibly engaged in the proceedings. During the first few days, he sat alone, while defense counsel sat behind the prosecution table. Franklin nodded, stared at the floor, played shadow games with his tie, and even formed shadow figures with his hands "in light cast from the screen upon which were displayed slides of his deceased family members and the burned house in which they died." He burped so often that the prosecutor mentioned it. Franklin also disrupted the proceedings by calling out to the judge that he needed to use the bathroom. Near the end of trial, a deputy guarding Franklin informed the court that his personality was changing and asked that he be shackled while in the courtroom. At sentencing, defense counsel told the court that, as an officer of that court, he personally believed Franklin was severely mentally ill and that he had been "very little if no help at all" in assisting in his defense.

## C

Franklin's claim that he was "tried while incompetent" involves two subclaims: (a) the trial court erred in determining that Franklin was competent at the pretrial competency hearing; and (b) Franklin was incompetent at the trial, held two-and-a-half months later. In other words, even assuming he was competent at the pretrial competency hearing, by the time trial commenced two-and-a-half months later, he was no longer competent. The latter subclaim overlaps with Franklin's third claim that the

district court erred in not ordering *sua sponte* a second competency hearing during the trial.

**1**

First, we consider the issue of Franklin's competency at the time of the pre-trial competency hearing.  Franklin contends that the pretrial determination that he was competent to stand trial was an unreasonable determination of fact in light of the evidence and an unreasonable application of clearly established Supreme Court precedent.  He did not challenge the trial court's competency determination in state court, however, and it is not completely clear that he even raised this subclaim in his federal habeas petition.  The Warden did not raise a procedural-default defense, but the district court nonetheless credited the Warden with raising the argument.  Although the district court suggested that the claim might be procedurally defaulted, it nevertheless reached the merits and denied relief.

On appeal, the Warden argues that this subclaim is defaulted because it was never raised in state court.  She concedes that she did not raise the default defense below, but points out that this court may raise it *sua sponte*.  *Lorraine v. Coyle*, 291 F.3d 416, 426 (6th Cir.), *amended on other grounds on reh'g*, 307 F.3d 459 (6th Cir. 2002).  Alternatively, the Warden contends that the subclaim is meritless.   Franklin does not reply to the default argument that the Warden makes for *this* subclaim. We find that this subclaim is defaulted and, alternatively, it is meritless.

**a**

Franklin did not present this claim to the state courts, nor may he take it there now.[2]  Claims that could have been, but were not, presented to the state courts and that are now barred by state procedural rule are deemed procedurally defaulted. *See Murray v. Carrier*, 477 U.S. 478, 485 (1986).  Default is excused if the petitioner demonstrates:

---

[2]It could not, for example, be presented in a post-conviction petition, because—assuming he was even permitted to file yet another—a post-conviction petitioner in Ohio is not allowed to raise constitutional claims that could have been raised on direct appeal. *See State v. Perry*, 226 N.E.2d 104, ¶¶ 7–9 (Ohio 1967).

(1) cause for the default and prejudice flowing therefrom; or (2) that failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Franklin argues neither cause and prejudice nor fundamental miscarriage of justice. We find that this subclaim is defaulted.

**b**

Even assuming that this subclaim was not defaulted, it fails on the merits. Two witnesses accepted as experts in the matter testified, and they disagreed about whether Franklin was competent. He has not shown that the trial court was *clearly* wrong in believing the State's expert. Nor has Franklin shown that the district court's finding was an unreasonable determination of the facts in light of the evidence presented.

**2**

Separate from his claim that he was not competent during the trial, Franklin argues that the trial court erred in not ordering *sua sponte* a second competency hearing midtrial. On direct appeal, the Ohio Supreme Court found this argument meritless. Franklin raised the claim in state post-conviction proceedings, where the state court of appeals held it was barred by res judicata. In federal habeas proceedings, the district court held that the Ohio Supreme Court's rejection of the claim was neither an unreasonable determination of the facts in light of the evidence presented nor clearly wrong.

To show that the trial court was aware of sufficient indicia of incompetence that it was required to order a midtrial competency hearing, Franklin first points to his pretrial suicide attempt and his stabbing of a cellmate while awaiting trial. Franklin's reliance on these two events is misplaced, however, as this information was before the trial court during its pretrial competency determination—in Dr. Cherry's original competency report—and thus did not provide the court with any new evidence that would require a reevaluation of Franklin's competency.

Franklin also invokes Dr. Cherry's expert testimony characterizing Franklin as paranoid schizophrenic—given at the *first* competency hearing—as a reason to hold a

*second* competency hearing.  But Franklin cannot rely on testimony already considered at the first competency hearing as cause to demand a second.  As the Ohio Supreme Court noted, Dr. Cherry's testimony did not require the trial court to hold an additional competency hearing "because similar testimony had been presented at appellant's pretrial competency hearing" and thus had already been considered in the court's original competency determination.  *Franklin*, 776 N.E.2d at 35.

Finally, Franklin relies on his affect and demeanor at trial—nodding, staring at the floor, rarely paying attention, making shadow figures with his hands, and playing shadow games with his tie—as evidence that the trial court was on notice of his incompetence and thus required to hold a second hearing.  As his most poignant example, Franklin describes his reaction when autopsy photographs depicting the charred, disfigured, and gory remains of his relatives were presented to the jury—he made shadow figures on the projection screen.  Furthermore, Franklin recounts that at the trial's conclusion, the deputy guarding him informed the court that Franklin's personality was changing and requested that he be shackled, a request the court denied.

Despite this odd courtroom behavior, according to Franklin's own summary of events, his actions were a continuation of the type of behavior he engaged in at the competency hearing.  At that hearing, rather than attending to the courtroom proceedings, Franklin stared at his hands, the ceiling, or in front of him, showing little interest or emotion and playing with his handcuffs.  The trial court had already seen and considered Franklin's detached affect when making its pretrial competency determination.  To the extent that Franklin's behavior was more extreme than what the trial court witnessed during the initial competency hearing, the Ohio Supreme Court found that Franklin's actions "illustrated a pattern of rudeness rather than incompetency to stand trial." *Ibid*.  The district court noted that "Franklin's burden [on habeas review was] to demonstrate that the state supreme court's determination that it was rudeness rather than incompetence that explained his strange behavior during his trial was an 'unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Franklin*, 2009 WL 649581, at *19 (quoting 28 U.S.C.

§ 2254(d)(2)). The district court correctly concluded that Franklin failed to supply "clear and convincing evidence sufficient to justify a finding that the state supreme court's [determination] was unreasonable." *Ibid*. (internal quotation marks omitted).

The trial court has a continuing duty to "always be alert to circumstances suggesting a change that would render the accused" incompetent. *Drope*, 420 U.S. at 181. However, because Franklin failed to provide significant evidence that was not before the court during its original competency hearing and failed to show that his behavior at trial was evidence of incompetence rather than rudeness, the trial court was not required to hold a second hearing. As such, the trial court's failure to hold a midtrial competency hearing *sua sponte* was not a "decision that was contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1).

**3**

Franklin contends that, whether the pretrial determination of competence was correct or not, he was incompetent two-and-a-half months later, leading up to and during the trial. This subclaim does not argue that the trial court erred in failing to order a midtrial competency hearing. That assertion is raised in claim 2. This subclaim instead argues that the *fact* that Franklin was incompetent at trial rendered that trial unconstitutional.

Franklin raised this argument in state post-conviction proceedings. However, the state court of appeals seemed to merge the resolution of this subclaim with claim 2 (whether another competency hearing was required). Thus, the state courts did not consider this discrete subclaim separately when denying it on collateral review.

During federal habeas proceedings, the Warden seemed unaware that this claim existed as a separate subclaim and so did not deal with it. Likewise, the district court never dealt with this as a discrete subclaim, existing separate and apart from both Subclaim 1(a) and Claim 2. Like the state court of appeals, the district court subsumed this subclaim into the broader issue of whether Franklin was entitled to a second competency hearing. Because the Warden has not argued that it is procedurally

barred—and because it is not clear that it *is* procedurally barred, *cf. Cone v. Bell*, 129 S. Ct. 1769, 1781 (2009) ("When a state court declines to review the merits of a petitioner's claim on the ground that it has done so already, it creates no bar to federal habeas review.")—we will reach the merits.

Subclaim 1(b) (incompetency during trial) and claim 2 (error in not holding a second competency hearing)—which are distinct legal claims—rest on the exact same evidence: Franklin's behavior *after* the first competency hearing and *during* the trial. These claims are subject to the deferential AEDPA standard. 28 U.S.C. § 2254(d)(2) ("[A] writ of habeas corpus . . . shall not be granted . . . unless the adjudication of the claim . . . resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."); *Harrington*, 131 S. Ct. at 786 (noting that as long as "fairminded jurists could disagree on the correctness of the state court's decision," relief is precluded under AEDPA.) As discussed earlier, a review of only the evidence before the trial court—and not new evidence raised at the evidentiary hearing, *see Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011)—regarding Franklin's competency falls short of indicating that Franklin was incompetent during trial. Franklin fails to establish that having him stand trial in light of his unusual courtroom behavior, which the Ohio Supreme Court deemed a demonstration of "rudeness," is contrary to or an unreasonable application of clearly established federal law.

## D

Franklin argues that trial counsel were ineffective in the guilt phase in failing to request another competency hearing. The district court denied this claim because, there being no merit to the underlying claim (trial-court error in not *sua sponte* ordering another hearing), there could be no merit to this claim either. We agree.

To establish trial counsel's ineffectiveness, petitioner must show: (1) that counsel's performance was deficient, i.e., objectively unreasonable under prevailing professional norms; and (2) that this deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984). Prejudice exists if there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. *Id.* at 694.

Because this claim was raised on direct appeal and Franklin abandoned the post-conviction version of the claim, *see Robinson v. Jones*, 142 F.3d 905, 906 (6th Cir. 1998), he can only rely on the record evidence that was before the Ohio Supreme Court on direct appeal. Based on this evidence and the presumptions attendant to the state supreme court's findings, Franklin was competent. There was no reason to hold a second competency hearing. It causes no prejudice not to raise an argument that would have lost anyway. Hence, counsel caused Franklin no prejudice when they did not request another competency hearing. The Ohio Supreme Court's rejection of this claim was neither contrary to, nor an unreasonable application of, clearly established Supreme Court precedent, was not based on an unreasonable determination of the facts in light of the evidence presented, and was not clearly erroneous. Franklin fails to demonstrate prejudice.

### III

Turning to arguments other than competency, Franklin argues that the trial court erred by denying him the continuance that he requested when one of his two arson experts died just days before testifying. Franklin raised this claim in a motion for new trial, which the trial court overruled. On direct appeal, the Ohio Supreme Court held that the claim was without merit. The district court held that the decision was neither contrary to, nor an unreasonable application of, clearly established Supreme Court precedent. Although the district court mentioned some evidence that came out at the federal evidentiary hearing,[3] the court's ultimate holding was "[b]ased on the information available to the trial judge at the time the motion for a continuance was made." This claim is without merit.

---

[3]The evidentiary hearing was held two months before the Supreme Court's decision in *Cullen v. Pinholster*, 131 S. Ct. 1388 (2011). *Cullen* held that federal habeas review under 28 U.S.C. § 2254(d) is generally limited to the record that was before the state court that adjudicated the claim on the merits. *Id.* at 1398, 1400 & n.7. In accordance with *Cullen*, we do not consider any evidence adduced at the hearing.

Trial courts are granted broad discretion on matters of continuances. *Morris v. Slappy*, 461 U.S. 1, 11 (1983). "The denial of a defendant's motion for a continuance amounts to a constitutional violation only if there is an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay." *United States v. King*, 127 F.3d 483, 486–87 (6th Cir. 1997) (internal quotation marks omitted); *see also Morris*, 461 U.S. at 11–12. As the Supreme Court put it:

> The matter of continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process even if the party fails to offer evidence or is compelled to defend without counsel. Contrariwise, a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality. There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, *particularly in the reasons presented to the trial judge at the time the request is denied.*

*Ungar v. Sarafite*, 376 U.S. 575, 589 (1964) (emphasis added) (citations omitted). It is not enough for the defendant to demonstrate error, however. He must demonstrate *reversible* error: that the continuance's denial "resulted in actual prejudice to his defense." *King*, 127 F.3d at 487 (internal quotation marks omitted). "The defendant demonstrates 'actual prejudice' by showing that a continuance would have made relevant witnesses available or added something to the defense." *Ibid.*

The record shows that the State finished presenting its witnesses on Friday afternoon, August 14, 1998. The defense planned to present its two arson experts, William Fricker and William Yeazell, the following Monday. In preparation for their case, defense counsel spent considerable time with Fricker on Saturday afternoon. Late that evening, however, Fricker suddenly died. On Monday morning, August 17, counsel moved for a continuance of one to two weeks to allow them to obtain a new expert to replace Fricker. The court asked whether they had another expert available. Counsel replied that, yes, they did: Yeazell was also an arson expert. But, counsel pointed out, the State had two arson experts, and the defense wanted to present two, who would

"complement each other."  The court indicated that the defense could present its arson theory through Yeazell's testimony and overruled the motion.

After presentation of the defense witnesses and just before presentation of the State's rebuttal witnesses, defense counsel renewed their motion for a continuance and proffered the testimony Fricker would have given: "[H]e would've testified to the same conclusions as has Mr. Yeazell regarding the cause and origin of the fire being the space heater in the center room."   The trial court overruled the motion.  At the close of evidence, defense counsel moved for a mistrial "due to the untimely death of Mr. Fricker."  The court overruled the motion.

Later, when overruling Franklin's motion for a new trial, the trial judge pointed out that counsel had given him no indication that Fricker's testimony would have differed in any salient respect from Yeazell's.  The judge also wrote that he did not share the "perception" of counsel

> that they lost on the arson charge because the State had two experts and [the defense] only had one.  As the Court instructed the jury, it is the quality of the testimony that is significant, and that may or may not reside with the number of witnesses testifying on a particular subject.

On appeal, the Ohio Supreme Court held that the trial court had not abused its discretion.  In support of this conclusion, the state supreme court cited the following factors:

> 1) the continuance was requested midtrial "which would have inconvenienced everyone involved and would have placed the jurors out of the court's control for a great deal of time";
>
> 2) this would have been the second continuance granted to the defense; the court had postponed the start of trial for seven months because of an auto accident one of Franklin's counsel had been involved in; and
>
> 3) the defense was able to call Yeazell to testify.

The trial court's denial of a continuance was neither unreasoned nor arbitrary. *See Morris*, 461 U.S. at 11–12; *King*, 127 F.3d at 486–87.  The trial court reasonably found that the defense's theory could be presented through Franklin's *other* arson expert.

Whether counsel had consciously prepared for this contingency or not, the fact remained that Yeazell was available and was presumably prepared, since counsel already planned to put him on.  At the moment the continuance was requested, defense counsel gave the judge no reason to think that Fricker's testimony would have differed from Yeazell's in any important respect.  Nor did they indicate that Fricker would have been a stronger witness.  That theory came later, after Yeazell's cross-examination.  At the time, the only justifications counsel gave for needing another expert—and thus, needing more time to get one—were parity (the State had two experts) and the defense's desire for complementary expert testimony.  The trial judge's response—given later, when denying a new trial—was quite reasonable: it is the quality of the testimony, not the number of witnesses, to which jurors are instructed to assign significance.

There is no doubt that the unexpected death of a prepared expert just two days before he was scheduled to testify placed counsel in trying circumstances. However, this difficult situation does not warrant the relief sought.  There being no error, it is unnecessary to consider prejudice.  The Ohio Supreme Court's rejection of this claim was neither contrary to, nor an unreasonable application of, clearly established Supreme Court precedent.

## IV

Franklin argues that executing the seriously mentally ill violates the prohibition against cruel and unusual punishment, the Equal Protection Clause, and the Due Process Clause. None of these claims was raised in state court.  These claims are defaulted.

## A

Franklin argues that the Eighth Amendment, as extended to the states through the Fourteenth Amendment, prohibits the execution of the mentally ill.  The claim was never raised in state court and is defaulted.  To overcome default, Franklin must show cause and prejudice or a fundamental miscarriage of justice.

Franklin argues that the claim could not have been raised earlier.  The Supreme Court has ruled that the Eighth Amendment draws its meaning from the evolving

standards of decency that mark the progress of a maturing society. *Atkins v. Virginia*, 536 U.S. 304, 311–12 (2002) (citing *Trop v. Dulles*, 356 U.S. 86, 100–01 (1958) (plurality)). Therefore, Franklin asserts that the claim could not be raised until those standards had evolved to the point where executing the seriously mentally ill was unconstitutional. He argues: "That time is now. It could not be raised before." Appellant Br. at 66.

Franklin similarly argues that the novelty of the claim provides cause to excuse the default. "[W]here a constitutional claim is so novel that its legal basis is not reasonably available to counsel, a defendant has cause for his failure to raise the claim in accordance with applicable state procedures." *Reed v. Ross*, 468 U.S. 1, 16 (1984).

These arguments fail. At bottom, Franklin's claim depends on three cases, each holding that it is unconstitutional to execute a particular category of defendants: *Thompson v. Oklahoma*, 487 U.S. 815 (1988) (plurality), which prohibited execution of those who were less than 16 years old when committing a murder; *Atkins*, 536 U.S. 304, which prohibited execution of the mentally retarded; and *Roper v. Simmons*, 543 U.S. 551 (2005), which expanded *Thompson*'s prohibition to include those who were 16 or 17 when committing a murder. Franklin compares the severely mentally ill, with their lesser culpability, to juveniles and the mentally retarded and argues that, as with them, executing the severely mentally ill should be held unconstitutional. Although no authorities have extended *Thompson*, *Atkins*, and *Simmons* to prohibit the execution of those with mental illnesses, arguing to remove certain categories of murderers from the death penalty, even when unsupported by earlier precedent, is a fairly common, not especially novel strategy, as shown by the very cases Franklin cites.

Given that Franklin failed to raise this claim before the state courts, there is a presumption that it is procedurally defaulted. In order for Franklin to overcome this presumption, he must show that the claim could not have previously been raised. Because he has failed to uphold his burden of demonstrating cause and prejudice, the claim is procedurally defaulted.

**B**

Franklin argues that the Equal Protection Clause prohibits the execution of those who are mentally ill.  The Warden argues that this claim is defaulted because it was never raised in state court.  Franklin argues that he was not required to present this claim to the state courts because there was an absence of available state corrective process or circumstances existed that rendered that process ineffective to protect his rights.  What he means by this argument is that the Ohio Supreme Court had rejected this claim one year earlier in *State v. Scott*, 748 N.E.2d 11 (Ohio 2001), so he would have lost had he presented the same claim.  Disinclination to lose is not cause for not trying.  "If a defendant perceives a constitutional claim and believes it may find favor in the federal courts, he may not bypass the state courts simply because he thinks they will be unsympathetic to the claim." *Engle v. Isaac*, 456 U.S. 107, 130 (1982).  As the Warden correctly notes, "[f]utility cannot constitute cause if it means simply that a claim was unacceptable to that particular court at that particular time." *Bousley v. United States*, 523 U.S. 614, 623 (1998) (internal quotation marks  omitted).

The claim was not raised in state court and may not be raised there now.  Franklin has established neither cause and prejudice nor a fundamental miscarriage of justice.  This claim is defaulted.

**C**

Franklin argues that the Due Process Clause prohibits the execution of the mentally ill.  The Warden argues that this claim is defaulted.  Franklin again argues novelty and absence or ineffectiveness of available state corrective process because of the *Scott* decision.  These arguments fail for the same reason that his Eighth Amendment and Equal Protection arguments fail.  The claim was not raised in state court and may not be raised there now.  Franklin has established neither cause and prejudice nor a fundamental miscarriage of justice.  This claim is defaulted.

**V**

Franklin argues that the trial court gave a constitutionally inadequate definition of "reasonable doubt."  This claim fails.  Tracking Ohio's statutory definition of reasonable doubt, the challenged instruction offered to the jury provided:

> Reasonable doubt is present when, after you have carefully considered and compared all the evidence, you cannot say you are firmly convinced of the truth of the charge or charges.  It is a doubt based on reason and common sense.  Reasonable doubt is not mere possible doubt, because everything relating to human affairs or depending on moral evidence is open to some possible or imaginary doubt.  Proof beyond a reasonable doubt is proof of such character that an ordinary person would be willing to rely and act upon it in the most important of his or her own affairs.

*See* Ohio Rev. Code § 2901.05(E).

Franklin attacks this definition on two grounds, one general, the other capital-specific.  The general claim asserts that Ohio's definition of reasonable doubt is constitutionally inadequate because it diminishes the level of proof needed to convict in *any* criminal case.  On direct appeal, the Ohio Supreme Court summarily rejected the claim.  In federal habeas proceedings, the district court understood Franklin to be raising only the capital-specific argument—that a stricter reasonable-doubt instruction was required to convict in capital cases than in other cases—and held it defaulted because never raised in state court.  Citing a long line of Sixth Circuit precedent, the district court also held that the claim was without merit.  *See Buell v. Mitchell*, 274 F.3d 337, 366 (6th Cir. 2001); *Scott v. Mitchell*, 209 F.3d 854, 884 (6th Cir. 2000); *Byrd v. Collins*, 209 F.3d 486, 527 (6th Cir. 2000) (all dealing with the general attack on Ohio's reasonable-doubt definition).  We agree with the district court.  As *Buell*, *Scott*, and *Byrd* all show, that argument—assuming it was not defaulted—is meritless.  Its rejection by the Ohio Supreme Court was neither contrary to, nor an unreasonable application of, clearly established Supreme Court precedent.

The Warden argues that the "substance" of Franklin's capital-specific argument is defaulted and that, in any event, the instruction given was constitutional.  *See Thomas*

*v. Arn*, 704 F.2d 865, 869 (6th Cir. 1983).  Denying that he presented only a general attack on the reasonable-doubt instruction on direct appeal, Franklin argues that his capital-specific argument is not defaulted.  He is wrong.  He never argued that *more* process was due capital defendants in the guilt phase than other defendants nor that a stricter definition of reasonable doubt was required to convict them than was needed for noncapital defendants.  *See Picard v. Connor*, 404 U.S. 270, 276 (1971); *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998).  Because Franklin never raised this issue in state court, it is defaulted. Franklin does not show cause and prejudice or a fundamental miscarriage of justice for either attack on the instruction. This claim was properly denied.

## VI

Franklin argues that the trial court erred in admitting 18 gruesome autopsy photographs of his victims that were shown to the jurors on a large projector screen.  The Ohio Supreme Court overruled the claim.  "Errors by a state court in the admission of evidence are not cognizable in habeas corpus proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial."  *Kelly v. Withrow*, 25 F.3d 363, 370 (6th Cir. 1994); *see also Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974) (stating the general due-process standard: whether the error "so infected the trial with unfairness as to make the resulting conviction a denial of due process").  After review of the photographs, we find that the admission of the photographs did not meet this high standard. It was not contrary to clearly established Supreme Court precedent for the Ohio Supreme Court to reject this claim.

## VII

All of Franklin's claims are meritless or defaulted, and the judgment of the district court denying the petition for a writ of habeas corpus is accordingly AFFIRMED.