NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0436n.06

Case No. 23-1413

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED

Oct 30, 2024

KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| DUANE PETERSON, | ) | DISTRICT OF MICHIGAN |
| Defendant-Appellant. | ) | |
| | ) | O P I N I O N |

Before: MOORE, COLE, and LARSEN, Circuit Judges.

COLE, Circuit Judge. Duane Peterson was indicted on various gang-related charges. Peterson twice unsuccessfully moved to suppress evidence against him. First, he moved to suppress a firearm recovered from a search of his motel room. Next, he moved to suppress cell phone data obtained from cell phones seized incident to his arrest. Peterson also twice moved to adjourn his trial date. The district court denied his first motion to adjourn but partially granted his second, adjourning trial for 13 days. The jury ultimately convicted Peterson on all counts. Peterson now appeals, claiming the district court erred in denying his motions to suppress and his motions for adjournment. For the reasons stated below, we affirm.

I.

Beginning around 2014, Peterson helped lead a drug trafficking group, It's Just Us ("IJU"). In May 2017, Peterson and other IJU members gathered to celebrate the birthday of a deceased member. When Peterson arrived at a bar for the IJU gathering, Christopher Marcilis, who had

arrived before Peterson, exited his vehicle, pulled out a firearm, and began disparaging the deceased IJU member and IJU. Multiple IJU members shot at Marcilis, prompting Marcilis to flee through an alley. Peterson and another IJU member pursued Marcilis. When Marcilis fell face first on the ground, Peterson shot Marcilis in the back of the head, killing him. Peterson and his fellow IJU member quickly disposed of their firearms by throwing them onto the roof of a neighboring building and fled the scene together.

Officers recovered the firearms from the roof. Forensic analysis confirmed that the bullet casings recovered from the scene were fired from those two firearms and that the bullets found under Marcilis's body and embedded in his chest, abdomen, and hip were fired from Peterson's firearm. Approximately two months after the murder, officers arrested Peterson. He possessed two cell phones on his person, which law enforcement seized during his arrest.

The following day, a Detroit police detective provided an affidavit to a state court judge. Finding that the affidavit provided probable cause that evidence of Marcilis's murder could be discovered in the cell phones' data, a state court judge issued a warrant authorizing officers to search the phones' electronic data for evidence of the murder. The search led to the discovery of communications between and photos of Peterson and other members of IJU.

In March 2018, Peterson and other IJU members patronized a liquor store. Peterson's girlfriend entered the store, and she and Peterson began fighting. Peterson threw her to the ground, choked her, and held her against the door by her throat. The parties eventually relocated to the parking lot where the assault continued with Peterson choking his girlfriend as other IJU members watched.

Eventually, a vehicle with its windows down stopped at a nearby traffic light, and the vehicle's occupants observed the assault. In response, an IJU member reached into the vehicle

and struck the front seat passenger in the face with his firearm. Peterson then shot at the vehicle. Another IJU member also shot at the vehicle as it fled. One of the bullets pierced the liver and lung of the backseat passenger.

After an IJU member involved in the shooting positively identified Peterson as one of the two shooters, law enforcement charged Peterson with assault with attempt to murder but struggled to locate him. Eventually, officers located Peterson at a motel in Detroit. The FBI's Violent Gang Task Force set up surveillance and confirmed that Peterson was staying in a particular room. A Detroit police detective promptly provided an affidavit to a state court judge. Finding that the affidavit provided probable cause that evidence of the shooting could be found in the motel room, a state court judge issued a warrant, authorizing officers to search the room for evidence of the attempted murder. The officers discovered a loaded firearm and extended magazine in the toilet tank.

In September 2020, law enforcement charged Peterson and seven other IJU members with gang-related crimes. Initially, Peterson was indicted for racketeering conspiracy, in violation of 18 U.S.C. § 1962(d), and conspiracy to distribute and to possess with intent to distribute controlled substances, in violation of 21 U.S.C. § 846. But in a second superseding indictment, a grand jury added charges for murder in aid of racketeering, in violation of 18 U.S.C. §§ 1959(a)(1) and (2), using and carrying a firearm during and in relation to a crime of violence causing death, in violation of 18 U.S.C. §§ 924(j) and 2, and felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). The first two additional charges stemmed from Marcilis's murder, and the firearm recovered from the motel provided the basis for the later charge. Following the second superseding indictment, in June 2022, the parties agreed to adjourn the trial to November 2022.

Peterson separately moved to suppress the firearm recovered from his motel room and the evidence recovered from the cell phones seized during his arrest. The district court denied both motions, concluding the warrants were supported by probable cause and, regardless, the officers relied on both warrants in good faith.

Six weeks before trial, Peterson moved to adjourn his trial for at least five months. The government opposed the motion, and following a hearing, the district court denied relief. Less than three weeks before trial, Peterson renewed his motion. This time, he sought at least a two month adjournment. Again, the government opposed the motion. Following another hearing, the district court granted the motion in part and denied the motion in part, adjourning the trial for 13 days to give Peterson's counsel more time to prepare.

Ultimately, the jury convicted Peterson of all five counts, and the district court sentenced him to 120 months on the felon in possession charge and life in prison on the four remaining counts to be served concurrently. Peterson now timely appeals.

II.

Peterson first contends that the district court erred when it denied his motions to suppress (1) the firearm seized via the search of his motel room and (2) the data retrieved from cell phones seized from his person incident to his arrest. Because the good faith-exception applies to both search warrants, we need not determine whether the warrants were supported by probable cause. For the reasons discussed below, we affirm the district court's determination that the good-faith exception applies as to both the firearm and the cell phone data.

In an appeal from a denial of a motion to suppress evidence, we review the district court's factual findings for clear error and its legal conclusions de novo, *United States v. Waide*, 60 F.4th

327, 335 (6th Cir. 2023), but give "great deference" to the issuing magistrate's initial finding of probable cause. *United States v. Johnson*, 351 F.3d 254, 258 (6th Cir. 2003).

A.

First, Peterson argues that the district court erred in denying his motion to suppress the firearm seized during the search of his motel room. Specifically, he asserts that the search warrant lacked probable cause because there was an insufficient nexus between his motel room and the firearm used in the liquor store shooting, the affidavit contained stale information, and the good-faith exception to the warrant requirement did not justify the search.

Where, as here, officers obtained evidence pursuant to a search warrant, even if the affidavit failed to establish probable cause, the good faith-exception may nonetheless preclude suppression. This court will not exclude evidence where police relied in good faith on a search warrant that was not supported by probable cause so long as their reliance was objectively reasonable. *United States v. Leon*, 468 U.S. 897, 922–24 (1984). Where officers discovered evidence after obtaining a warrant, the good-faith exception precludes suppression unless: (1) the warrant affidavit includes statements that the affiant knew or should have known were untrue; (2) "the issuing magistrate wholly abandoned his or her judicial role;" (3) the warrant affidavit is "bare bones" or lacks any indicia of probable cause; or (4) "the warrant is so facially deficient" that it would be unreasonable for the executing officers to think it was valid. *United States v. Washington*, 380 F.3d 236, 241 (6th Cir. 2004). Peterson asserts that the good-faith exception should not apply to the motel search because the underlying warrant was bare bones, and the warrant affidavit included statements that the affiant knew or should have known were untrue.

An affidavit is bare bones if it is "conclusory" and contains only a guess that evidence of a crime would be found. *United States v. White*, 874 F.3d 490, 496 (6th Cir. 2017). On the other

hand, an affidavit is not bare bones when it falls short of probable cause but contains a "minimally sufficient nexus" between the evidence and the place to be searched. *See United States v. Carpenter*, 360 F.3d 591, 596 (6th Cir. 2004) (en banc).

Here, the search warrant affidavit is not bare bones. The affidavit contained the following information: the victim stated that he was in a vehicle stopped at a red light when he and the vehicle's other passengers observed a man (later identified as Peterson) and a woman fighting in a parking lot, another IJU member approached the stopped vehicle and struck the front passenger in the face with his firearm, and Peterson removed a firearm from his waistband and shot at the vehicle, striking the victim; the other IJU member involved in the shooting identified Peterson as the person who shot at the vehicle; law enforcement positively identified Peterson based on surveillance footage of the events surrounding the shooting; law enforcement indicted Peterson for assault with intent to murder; law enforcement surveilled the motel and observed Peterson check in and remain in a motel room; and the affiant stated that based on his experience, firearms are durable goods maintained for extended periods of time and kept in locations familiar and accessible to the possessor.

Peterson contends the affidavit contained no evidence that he had a firearm in the motel room. But this argument overlooks information contained within the four corners of the affidavit. The affidavit described the victim's account of the shooting and how Peterson pulled a firearm from his waistband, indicating that he carried the firearm on his person. It detailed how, based on the affiant's experience and training, shooters keep their firearms in accessible locations. And finally, it explained the affiant had reason to believe that Peterson was currently in the motel room in question; the affiant reviewed video surveillance of lobby and check in counter and set up

surveillance of the location, monitoring all entrances and exits. The affidavit contained more than a mere guess that evidence of the shooting would be found in Peterson's motel room.

Peterson's second argument—that the good-faith exception does not apply because the underlying affidavit contained an untruth—also fails. On appeal, he specifically asserts that the affidavit "contained a false statement that there was 'surveillance footage recovered from the scene of the incident' that showed [Peterson] as the other shooter in the video." But as discussed by the district court, "the affidavit did not allege the existence of a video showing [Peterson] as the shooter." (Op. and Order Denying Mot. to Suppress, R. 272, PageID 2070.) The affidavit stated only that after reviewing the surveillance footage, law enforcement positively identified Peterson as the other shooter in the video.

The surveillance cameras did not record the shooting itself, but the footage showed the events leading up to the shooting, Peterson and the other IJU member involved in the shooting inside the store, Peterson's physical altercation with his girlfriend, and Peterson returning to his vehicle after the shooting. And because the other IJU member involved had already identified Peterson as the other shooter, law enforcement's review of the footage verified Peterson's identity, not his participation in the shooting. Therefore, the affidavit did not contain a false statement regarding the surveillance footage.

Peterson also claims that the affiant knew or should have known that the other IJU member involved in the shooting lied about his involvement in other crimes before he identified Peterson as the second shooter. As Peterson failed to raise this issue below, he forfeited the argument. *See Bannister v. Knox Cty. Bd. of Educ.*, 49 F.4th 1000, 1011 (6th Cir. 2022) ("[A]ppellate courts hold that a party has forfeited an argument when the party belatedly asserts it on appeal after having

failed to raise it in the district court."). Therefore, we apply the plain-error standard to this claim. *See United States v. Burrell*, 114 F.4th 537, 549 (6th Cir. 2024).

To reverse under the plain error standard, this court must find: (1) an error, (2) that error was plain, and (3) that error affected substantial rights. *United States v. Kuehne*, 547 F.3d 667, 687 (6th Cir. 2008). Only if all three requirements are met and "the error seriously affects the fairness, integrity, or public reputation of judicial proceedings[,]" may this court "exercise its discretion to notice [the] error." *Johnson v. United States*, 520 U.S. 461, 467 (1997) (cleaned up). Peterson's argument fails at the first prong. Peterson does not detail the other IJU member's alleged prior lies, nor does he point to anywhere in the record where we can find evidence of the alleged lies. And if anything, the affidavit contains additional information that would bolster the other member's credibility. Officers corroborated the tip with both the victim's statements and video surveillance showing Peterson's presence at the time of the shooting. Thus, because the district court did not commit error, Peterson's claim regarding the falsity of the other member's statements fails.

B.

Next, Peterson contends that the district court erred in denying his motion to suppress the data retrieved from cell phones seized from his person incident to his arrest. He argues that the district court erred because the affidavit supporting the warrant fails to state sufficient facts to establish that evidence of the alleged murder would be found on the cell phones.

The district court held that the cell phone search warrant was supported by probable cause and found that "even if the warrant [] lacked probable cause, the good faith exception would apply, making exclusion an inappropriate remedy." (Op. and Order Denying Second Mot. to Suppress, R. 332, PageID 2857.) We understand Peterson to be challenging the district court's good-faith

determination on the ground that the affidavit is bare bones because it is too conclusory and lacks a minimally sufficient nexus between the evidence sought and the cell phones to be searched. Peterson contends the affidavit fails to establish anything more than that Peterson was accused of murder, and that he had cell phones on his person when he was arrested two months later.

Here, the search warrant affidavit is not bare bones. The affidavit contained the following information: the affiant's law enforcement experience; the details of the fatal shooting; description of surveillance footage of the events before and after the shooting, showing Peterson and another IJU member chase Marcilis together, discard their firearms on the roof, and flee together in the same vehicle; the statement by the victim's family that a man belonging to the IJU Facebook page (that was deactivated at the time) was involved in the shooting; Peterson's arrest and self-identification; and Peterson's possession of the cell phones at the time of his arrest.

The affidavit supports at least two possible inferences that suggest evidence of the crime could be found on his cell phones. First, the affidavit describes the coordination of multiple people and vehicles during and after the shooting. From this, it might be inferred that those individuals, including Peterson, used cell phones to coordinate their illegal conduct that night. Second, the affidavit describes an allegation of the victim's family that the shooter, identified as Peterson, belonged to a no-longer-available Facebook page called "IJU Winning." This might suggest that Peterson used his cell phone to post about his involvement in the shooting, and that evidence could still be on his cell phone. Pulling together these pieces of information and the inferences that can be drawn from them, we are satisfied that the affidavit established at least a "minimally sufficient nexus" between the evidence sought and the cell phones to be searched. *Carpenter*, 360 F.3d at 596. We cannot say that the affidavit was "so lacking in indicia of probable cause that no reasonable officer would rely on the warrant." *White*, 874 F.3d at 496. Thus, the district court did

not err by concluding that officers relied in good faith on the warrant. In reaching this conclusion, we express no opinion on whether the affidavit would satisfy the nexus requirement of probable cause.

III.

Peterson also challenges the district court's denial of his motions to adjourn, arguing the denials infringed upon his constitutional rights to due process and the effective assistance of counsel. We review a district court's decision to deny a motion to continue a trial for abuse of discretion. *See United States v. Amawi*, 695 F.3d 457, 480 (6th Cir. 2012).

A denial of a continuance violates the Constitution only if the district court unreasonably and arbitrarily "insist[s] upon expeditiousness in the face of a justifiable request for a delay." *United States v. Gallo*, 763 F.2d 1504, 1523 (6th Cir. 1985). And we will not reverse a denial unless the defendant demonstrates that the denial actually prejudiced his defense such that his defense could have produced "relevant witnesses" or added something to his defense had the continuance been granted.[1] *Franklin v. Bradshaw*, 695 F.3d 439, 453 (6th Cir. 2012).

Here, Peterson fails to establish that the denial resulted in actual prejudice. Although he broadly contends the voluminous and "untimely" discovery, the serious nature of the charges against him, and the additional charges filed in May 2022 made it "professionally impossible" for counsel to render effective assistance, he does not suggest what his counsel would have done differently had the district court granted the continuance. Peterson also claims that the denials deprived him of his rights to due process and confrontation. But the general declaration that a

---

[1] A defendant may—in extreme cases—establish actual prejudice based on an "unreasonably short time to prepare." *Gallo*, 763 F.2d at 1524 (reversing conviction when the district court allotted counsel only ten days to prepare for trial on a complex RICO charge). The length of time counsel had to prepare in this case, however, was not nearly so unreasonable as to independently establish prejudice.

constitutional right was denied, with nothing more, does not establish actual prejudice. Therefore, the district court did not abuse its discretion when it denied his motions for adjournment, and we affirm the district court's denial of his motions to adjourn.

IV.

For the foregoing reasons, we affirm.