NOT RECOMMENDED FOR PUBLICATION
File Name: 15a0319n.06

No. 14-3138

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
May 01, 2015
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| RONALD STOLLE, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| KENT STATE UNIVERSITY; KATHRYN | ) | NORTHERN DISTRICT OF OHIO |
| WILSON; LESTER LEFTON; JOHN | ) | |
| THORNTON; RICHARD KOLBE | ) | OPINION |
| | ) | |
| Defendants-Appellees. | ) | |

BEFORE:    BOGGS, SUTTON, and STRANCH, Circuit Judges.

**JANE B. STRANCH, Circuit Judge.**  Ronald Stolle, a non-tenure track faculty member in the Department of Finance at Kent State University, sued the university and various administrators alleging retaliation for exercising his First Amendment rights.  Summary judgment was granted to Richard Kolbe and John Thornton, based on the court's finding that Stolle did not suffer an adverse action when he was summoned to meet with Kolbe and Thornton to discuss his violation of university policy.  Kolbe and all of the other Defendants were dismissed except Thornton, and the case against him proceeded to trial on the sole issue of whether Stolle's protected speech was the but-for cause of his termination.  The jury found for Thornton.

Stolle raises two issues on appeal. First, he challenges the factual basis for the grant of summary judgment to Kolbe and Thornton. We AFFIRM the grant of summary judgment to Kolbe and Thornton. Second, Stolle disputes the district court's finding of material fact regarding the fiscal and staffing constraints that shaped Thornton's decision to eliminate Stolle's position, and argues that the district court abused its discretion in failing to grant him a 24-hour continuance after it partially reversed this same finding of fact. The district court erred in its finding of fact pursuant to Federal Rule of Civil Procedure 56(g), but, finding no prejudice to Stolle, we hold that the district court did not abuse its discretion in denying the motion for a continuance and so AFFIRM on that issue as well.

## I.      BACKGROUND

### A. Facts

Dr. Ronald Stolle ("Stolle"), a finance executive with 29 years of experience in the private sector, was hired as an instructor in the Department of Finance at Kent State University ("KSU") beginning in the 2006-07 academic year. The events at issue in this lawsuit occurred in 2011-12, when Stolle alleges that Defendants retaliated against him for exercising his First Amendment right to free speech.

On January 4, 2011, Stolle wrote a three-page letter to the Speaker of the Ohio House of Representatives, as well as several other legislators, using letterhead from KSU's Department of Finance. The letter contained the subject line, "Legislative Proposal for Reform of Higher Education," and proposed eliminating tenure at Ohio's public universities as a cost-saving measure. Stolle considered the letters to be an expression of his personal "opinions," although beneath his signature he included his professional title, "Assistant Professor—Finance," and departmental address as well as his personal contact information. He acknowledged that his

2

purpose in writing was to influence reform and cost-cutting legislation. Stolle had written to state legislators at least once before in 2010, also advocating the elimination of tenure; however, he did not use KSU letterhead on that occasion.

Upon receiving Stolle's letter, the Speaker's office contacted KSU's lobbyist, who in turn contacted KSU officials. On January 12, Iris Harvey ("Harvey"), vice president for University relations, sent an email to KSU personnel[1] providing a copy of Stolle's letter. She explained that Stolle's "use of university and college letterhead makes this a formal presentation and representation from a KSU employee to our legislature—in violation of our policy," and recommended that Stolle be informed of the policy "so that he is clear on what is and is not appropriate." R. 47-23, PageID 895. Harvey then cited policy 5-03(A), "University policy regarding appearances before governmental officers," which provides that

> Subject to specific control by the board, the preparation and presentation of requests for appropriations from the state of Ohio, and all official dealings on behalf of the university with all federal, state and local government offices, boards and agencies shall be under the direction of the president of the university. Unauthorized appearances before federal, state and local government offices, boards and agencies are hereby prohibited.

R. 47-16, PageID 884. In the past, Harvey had discussed the policy with other KSU faculty whose work brought them into contact with public officials.

Yank Heisler ("Heisler"), Dean of the College of Business,[2] forwarded this email to John Thornton ("Thornton"), Chair of the Department of Finance, and Richard Kolbe ("Kolbe"), Associate Dean for Faculty at the College of Business, asking them to meet with Stolle. Stolle was told to meet with Thornton and Kolbe at Thornton's office and did so on January 13

---

[1]The email was sent to: Lester Lufton, the University President; Yank Heisler, the University Dean; Charlene Reed, the chief of staff to the president; Willis Walker, general counsel in Human Resources; Sue Averill, the associate provost; Tim Chandler, the senior associate provost; and was cc'ed to Crystal Cook, the University's senior lobbyist; Michael Caputo, a consultant; and Constance Hawk, a federal government relations officer.

[2]The College of Business consisted of five departments, including Finance as well as Economics, Management Information Systems, Accounting, and Marketing.

(hereinafter, "the Meeting"). Thornton testified that the Meeting was held to inform Stolle that "he had violated [KSU] policy," specifically by using KSU letterhead to communicate with members of the legislature. Kolbe also believed that the meeting concerned Stolle's violation of KSU policy and that the KSU might reprimand him at a later point.

During the Meeting, Stolle admitted that he had written the letter to the Speaker and others. Stolle later confirmed that Thornton and Kolbe then informed him that it was a violation of KSU policy to use its letterhead to correspond with government entities, insofar as doing so gave the impression that his opinions represented those of KSU, and that he should stop doing so. Thornton and Kolbe recalled providing Stolle with a copy of the policy, that he read it in their presence, and that he said he understood it when asked. Stolle denied being given the policy at that time but admitted that he read it subsequently. The meeting lasted approximately five minutes.

Stolle concluded that "the thrust of what I heard was to cease and desist, that I did not have the right to contact legislators as an employee." R. 47-6, PageID 524. He recalled that he asked Thornton and Kolbe about his freedom of speech and academic rights and refused to comply with their request. Thornton denied that he told Stolle to cease and desist communicating with legislators, emphasizing that the sole issue was the use of KSU letterhead in such communications. Stolle felt it was "impl[ied]" that he would lose his position at KSU if he did not comply with these demands, although neither Thornton nor Kolbe specifically told him that his job was in jeopardy. He noted that "[t]he atmosphere in a university is very political. Implications are drawn all the time." He described the overall tone of the meeting as a "very, threatening, intimidating type of situation," and recalled that both men were "very upset." Even so, Stolle recalled that he "chuckled at their cease and desist," specifically the instruction that he

4

"not speak to legislators about the tenure issue" as he "was not authorized" to do so. Stolle also described the Meeting as "very short" and said that he "laughed the whole thing off." R. 47-6, PageID 530.

During the Meeting, Thornton also questioned Stolle about his attendance at a State Committee on Financial Literacy because he thought that Stolle had not been appointed to represent KSU on that Committee. Thornton instructed Stolle not to attend any further meetings until his Committee status was clarified. At trial, Stolle testified that Thornton knew of his attendance at the Committee meetings during the prior year and a half and had not objected previously.

Soon after the Meeting, Heisler emailed Kolbe, asking him to inform Harvey that he and Thornton had done the "verbal reprimand." After the Meeting, Thornton told at least one other faculty member that he had delivered a "warning" to Stolle.

On January 15 and 16, 2011, nearly identical op-eds by Stolle ran in the Columbus Dispatch and Cleveland Plain Dealer, also advocating the abolition of tenure at state universities. Although the editorials provoked a flurry of disapproving emails among Stolle's colleagues, Stolle's teaching appointment was renewed for the 2011-12 academic year. By January 2012, however, Thornton came to the conclusion that Stolle's appointment would likely be terminated.

In describing his decision to eliminate Stolle's position, Thornton cited the Department's deficit of approximately $250,000, which he felt pressure to address, although the prior year's deficit had been $400,000 and the department's finances appeared to be improving. Thornton admitted that neither the dean nor the provost required him to eliminate a position—he had been told simply "that [the department was] losing money and [it] needed to do a better job." R. 47-7, PageID 570-71. Thornton also cited the termination of the Master of Science in Financial

Engineering (MSFE) [3] program in January 2012 as a major factor in his decision not to renew Stolle's contract. The program's termination meant that six classes would be eliminated, and tenured and tenure-track faculty had teaching priority. In determining his staffing needs, Thornton also considered whether Dr. Shelly Zhao ("Zhao") would remain on leave or return to teaching, as well as the possibility that Dr. Mark Holder ("Holder") would not teach the following year. Holder was terminated in May 2012.

Dr. Kathryn Wilson ("Wilson"), interim dean of the College of Business, confirmed that ending the MSFE would mean "less financial loss" for the department, although it also would mean that faculty would need to be "redeployed to teach in other areas." Even so, she said that she would not have asked Thornton to terminate a position for budgetary reasons. Kolbe testified that the College of Business had no rules or policies in effect concerning elimination of faculty positions to meet budgetary constraints, nor had any other department in the College eliminated any faculty positions—tenure or non-tenure track—for budgetary reasons during the 2008-11 period.

Thornton considered eliminating either Stolle's position or that of Dr. David Dumpe because both were non-tenure track faculty whose contracts could be terminated at the end of a given year. Thornton cited the following reasons for choosing to retain Dumpe: Dumpe had a Ph.D. in finance, had taught at KSU longer than Stolle, had won several teaching awards, and maintained a jobs listserv for undergraduate finance majors and for some of the Department's graduates. Thornton denied that Stolle's letters to legislators or op-eds, which were sent prior to

---

[3]The primary cause of the Department of Finance's monetary woes was the MSFE program. Maureen Kennedy, the director of financial and business operations, testified that in the original budget for fiscal year 2011 the Department of Finance had a projected deficit of $580,000, but as of the January 2012 termination of the program, it was reduced to $234,077. The Department of Finance was profitable as of September 2012, due largely to the termination of the MSFE program.

Stolle's reappointment for the 2011-12 academic year, had anything to do with his decision not to renew him. He also denied that Stolle's job performance was at issue.

Around February 17, Thornton sent similar memoranda to Wilson and an ad hoc faculty committee—consisting of Drs. Jayaram Muthuswamy, Lois Beier, Zhao, and Holder—that he formed to evaluate Stolle's situation. In the memos, Thornton presented the case for eliminating Stolle's position in light of the decision to end the MSFE program and the resulting need for six more classes that tenured and tenure-track faculty could teach. Thornton noted that two of the nine classes Stolle taught each year could be cancelled due to their "disappointing" and "negative" enrollment trend, that Stolle's role in overseeing undergraduate investigations could easily be covered, and that the impact of Stolle's termination on the department would be "minimal." In his memo to Wilson, Thornton also noted that Stolle was "limited" because he would not teach graduate students in the MBA program, and that adjuncts and doctoral students could cover the classes Stolle had formerly taught or that might need to be covered due to the potential absences of Zhao and Holder. The ad hoc committee was not presented with any other options to address the department's financial deficit or staffing needs.

The committee voted not to renew Stolle by a vote of three to one. Holder voted not to eliminate Stolle's position, stating in a later email: "My recommendation stands about his teaching performance. Regarding the department need, based only on the RCM[4] numbers I have seen, keeping him is justified." R. 47-7, PageID 590. After his contract was terminated, Stolle asked Wilson to review the decision, which she affirmed, although she also continued with a promotion process for Stolle, in the event he were ever rehired by KSU. Stolle has not found a teaching position at another college in northeast Ohio.

---

[4]"Responsibility center management" or "RCM" was the term Kent State used for its system of determining departmental profitability.

B. **Case Proceedings:**

In June 2012, Stolle brought suit, alleging that KSU, President Lester Lefton ("Lefton"), Thornton, Kolbe and Wilson had retaliated against him for exercising his First Amendment right to free speech. In response to their respective motions, the district court ultimately ordered KSU, Lefton, Wilson, and Kolbe to be dismissed from the case, leaving only Thornton. In the course of its July 18, 2013 order granting Kolbe's motion for summary judgment, the court found that the only event in which Kolbe had participated, the Meeting, did not constitute an adverse action sufficient to support a claim of First Amendment retaliation.[5] In the same order, the court denied the remaining Defendants' requests for summary judgment and made the following finding of indisputable fact: "that Defendant Thornton was required to eliminate a non-tenure-track position as a result of [] budgetary and programmatic constraints." The court determined that the sole issue to be presented to the jury would be whether Thornton was justified in his choice to terminate Stolle as opposed to Dumpe, and whether Stolle's protected conduct was the "but for" cause of his termination.

In response to Thornton's motion requesting clarification of the court's findings of fact, the court issued an order affirming its finding that Thornton was "required to eliminate a non-tenure track position as a result of budgetary and programmatic constraints," pursuant to Rule 56(g). At pretrial conference, Stolle's counsel again argued that factual issues remained regarding whether or not Thornton was obligated to eliminate a position, but the court refused to reconsider the issue.

Trial began on January 8, 2014 on the sole issue of whether Thornton terminated Stolle instead of Dumpe as a means of retaliating against Stolle's exercise of his First Amendment

---

[5]Kolbe resigned from Kent State University and took a position with Northern Kentucky University in May 2011.

rights. After selection of the jury, the court addressed pending motions in limine during which it abruptly reversed its prior finding of fact, declaring that Thornton could "take whatever steps he wished to address a financial shortfall in the department," and that "it was not of necessity to not renew the plaintiff." R. 88, PageID 1553. The court stated that Thornton's means of addressing the deficit was "a matter for the jury to decide." When Stolle's counsel pointed out that the court had already ruled that "Thornton had to eliminate" a non-tenure track position, the court replied, "No, I don't think I've ruled that." R. 88, PageID 1554. In response to Defendants' request for clarification, the court observed: "I don't know that he was required to terminate anyone. It's a decision that he made[,]" then noted, "it might be error for me to say, 'Well, you can't argue that Dr. Thornton must or had to non-renew a candidate.'" R. 88, PageID 1775, 1559. Subsequently, the court stated again: "I think it would be a clear error for me to instruct the jury that Dr. Thornton had no other choice but to eliminate a position. Because he had a choice. He made a choice. And that was within his discretion, rightly or wrongly." R. 88, PageID 1567.

In light of the court's new position, Defendants' counsel asked for a continuance, which the court denied. The next morning, January 9, Stolle's counsel requested a 24-hour continuance, citing his inability to put on the presentation necessary to argue his case in light of the court's ruling the previous day. Specifically, he cited his need for exhibits relevant to Thornton's knowledge of other faculty's teaching plans, KSU's retrenchment policy, and department finances. Defendants' counsel objected, pointing out that when they had requested a continuance the previous day, Stolle's counsel had not done so. The court then denied the motion, because the issues had been "clearly touched on" during discovery and depositions. R. 89, PageID 1580-82.

9

After a four-day trial, a unanimous jury found Stolle had failed to prove that Thornton's decision to terminate his employment was a means of retaliating against Stolle's exercise of his right to free speech. Stolle appealed, alleging that the court erred 1) in finding that the Meeting did not constitute an adverse action sufficient to support a claim of retaliation; 2) in initially finding that Thornton was "required" to eliminate a non-tenure track faculty position; and 3) in denying Stolle's motion for a 24-hour continuance.

## II.    ANALYSIS

### A.  First Amendment Retaliation Claim Against Kolbe and Thornton

Before trial, the district court granted summary judgment to Kolbe and Thornton on the retaliation claim. We review de novo a district court's order granting a motion for summary judgment. *Montell v. Diversified Clinical Serv., Inc.*, 757 F.3d 497, 503 (6th Cir. 2014). Summary judgment is appropriate where there is no genuine dispute regarding any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

To prove a claim of First Amendment retaliation, a plaintiff must make a prima facie case comprised of the following elements: "'1) he engaged in constitutionally protected speech or conduct; 2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; 3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by his protected conduct.'" *Benison v. Ross*, 765 F.3d 649, 658 (6th Cir. 2014) (quoting *Dye v. Office of the Racing Comm'n*, 702 F.3d 286, 294 (6th Cir. 2012)); *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). If a plaintiff establishes a prima facie case, the burden then shifts to the defendant to demonstrate "by a preponderance of the evidence that the employment decision would have been the same absent the protected conduct." *Benison*, 765 F.3d at 658 (quoting

*Dye*, 702 F.3d at 294). Summary judgment is proper if, once the shift has occurred, "in light of the evidence viewed in the light most favorable to the plaintiff, no reasonable juror could fail to return a verdict for the defendant." *Id.* (quoting *Dye*, 702 F.3d at 294-95)

Stolle argues that in the Meeting, Kolbe and Thornton retaliated against him because he sent letters on KSU letterhead to Ohio legislators suggesting that tenure be abolished. We examine this claim beginning with Stolle's prima facie case. Neither party questions that Stolle's letters were a constitutionally protected form of speech. *See Leary v. Daeschner*, 228 F.3d 729, 737 (6th Cir. 2000). The parties do dispute, however, whether the actions of Defendants constituted "adverse action" against Stolle for First Amendment purposes.

To constitute an adverse action, a plaintiff must show that the actions taken "'would chill or silence a person of ordinary firmness from future First Amendment activities.'" *Benison*, 765 F.3d at 659 (quoting *Ctr. for Bio-Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 822 (6th Cir. 2007)); *Thaddeus-X*, 175 F.3d at 397. A plaintiff need not show that he was "actually deterred" from exercising his free speech rights. *Ctr. for Bio-Ethical Reform, Inc.*, 477 F.3d at 822. In the employment law context, "adverse action" refers to actions such as "discharge, demotions, refusal to hire, nonrenewal of contracts, and failure to promote." *Thaddeus-X*, 175 F.3d at 396. Actions sufficient to constitute an adverse action also include "harassment or publicizing facts damaging to a person's reputation," or a "credible threat to the nature and existence of one's ongoing employment." *Fritz v. Charter Twp.*, 592 F.3d 718, 724, 728 (6th Cir. 2010). Determining if an adverse action has occurred is an objective inquiry. *Thaddeus-X*, 175 F.3d at 398. While "de minimus" threats or "inconsequential actions" are unlikely to have a sufficiently chilling effect, it is not necessary to show "egregious retaliatory acts" in order to proceed beyond summary judgment. *Ctr. for Bio-Ethical Reform*, 477 F.3d at

822 (quoting *Thaddeus-X*, 175 F.3d at 398). However, as § 1983 is a tort statute, it is necessary that an injury have occurred, for it "'trivialize[s] the First Amendment to allow plaintiffs to bring . . . claims for *any* adverse action[,] no matter how minor.'" *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 584 (6th Cir. 2012) (quoting *Bell v. Johnson*, 308 F.3d 594, 603 (6th Cir. 2002).

Stolle challenges the grant of summary judgment to Kolbe, alleging that the Meeting included four adverse actions: 1) he was verbally reprimanded for communicating with state legislators; 2) he was ordered to cease all communications with state legislators; 3) he was led to believe that if he continued such communications he would lose his job; and 4) he was told to discontinue his attendance at meetings of the State Committee on Financial Literacy. Stolle makes no specific allegations concerning Kolbe's role when Thornton instructed him to discontinue—temporarily, at least—his service with the State Committee on Financial Literacy. Stolle does not ascribe any specific remarks to Kolbe, but claims that the tone of the meeting was generally "intimidating." Kolbe maintains that the meeting was intended to and did simply inform Stolle that he had violated KSU policy.

Stolle admits that the purpose of his "very short" Meeting with Thornton and Kolbe was to inform him that he had violated KSU's policy regarding an employee's unauthorized use of university letterhead in corresponding with government entities. During the Meeting Stolle admitted to writing a letter to the Speaker of the State House using university letterhead, and admitted that he was told "it was a violation of policy for me [to] communicate my opinions with third parties, including governmental officers, as if these opinions were those of KSU." R. 47-6, PageID 525. Although Stolle also alleges that he was told to "cease and desist" such contact, his testimony makes clear that the primary topic of the meeting was his use of letterhead in his communications with legislators and his violation of an established KSU policy. The

12

enforcement of this valid university policy, even if delivered and understood as a "reprimand," did not exceed the threshold requirement that an action be more than "de minimis" or "inconsequential" in order to be considered adverse. *Bell*, 308 F.3d at 603.

Stolle's vague claim that Thornton and Kolbe's words and tone "impli[ed]" that his job might be at risk if he continued to contact state officials is also not borne out by the record nor does that record indicate that KSU officials took any other actions that would "'deter a person of ordinary firmness'" from his First Amendment activities. *Benison*, 765 F.3d at 659 (quoting *Ctr. for Bio-Ethical Reform, Inc.*, 477 F.3d at 822). Although Stolle described the Meeting as "intimidating," citing the "political" atmosphere of KSU, he also admitted that no one ever directly told him that his job was in jeopardy. Moreover, he said that he found the Meeting to be "a joke" and "laughed the whole thing off." Several days after the Meeting, Stolle's op-eds advocating abolition of tenure ran in two local papers. In light of this record, we agree with the district court that Stolle has not proven that he suffered an adverse action in the context of the Meeting and therefore did not make his prima facie case of First Amendment retaliation regarding that event. Accordingly, we affirm the district court's grant of summary judgment to Kolbe.

## B. The District Court's Finding of Indisputable Fact

Stolle argues that the district court erred in finding it to be an indisputable fact that Thornton was forced to eliminate a non-tenure track position as a result of budgetary and programmatic constraints. Defendants argue that the district court did not err but made a proper finding of fact pursuant to Federal Rule of Civil Procedure 56(g) in the context of its denial of Defendants' motion for summary judgment. "We review de novo denials of motions for summary judgment on purely legal grounds [and] we review for abuse of discretion denials

13

based on the finding of a genuine issue of material fact." *Marcilis v. Twp. of Redford*, 693 F.3d

589, 598 (6th Cir. 2012) (internal citation and quotation marks omitted).

Federal Rule of Civil Procedure 56(g) provides that:

If the court does not grant all the relief requested by the motion [for summary judgment], it may enter an order stating any material fact—including an item of damages or other relief—that is not genuinely in dispute and treating the fact as established in the case.

In this case, it is clear that the district court did err in making such a finding of fact. In its partial

grant of summary judgment to Defendants, the district court made the following statement:

Defendants claim that there exists substantial objective evidence that one non-tenure track faculty member had to be eliminated due to budgetary and programmatic restraints. The Court agrees. The record makes clear that there would be a reduced load of classes in the finance department due to the elimination of a program that had consistently been a strain on the finance department's budget. Moreover, the Court finds that there is no genuine issue of material fact surrounding the fact that Defendant Thornton was required to eliminate a non-tenure track position as a result of these budgetary and programmatic constraints.

R. 56, Page ID 1149. The finding had the effect of considerably narrowing the scope of the

issues to be presented to the jury, restricting the inquiry to whether or not Stolle's protected

expression was the "but for" cause of Thornton's decision to terminate his contract instead of

that of Dumpe.

The court reaffirmed the finding in a subsequent order and again at a pretrial conference.

After the trial began in January 2014, however, the district court reversed itself, announcing that

Thornton could "take whatever steps he wishes to address a financial shortfall in the

department," R. 88, PageID 1553, because that "is a matter for the jury to decide," R. 88, PageID

1553. Shortly thereafter, the court stated: "I think it would be a clear error for me to instruct the

jury that Dr. Thornton had no other choice but to eliminate a position. Because he had a choice.

He made a choice. And that was within his discretion, rightly or wrongly." R. 88, PageID 1567.

The record speaks for itself. Precisely because Thornton's motivations for terminating Stolle's contract were genuinely in dispute, it was improper for the court at the summary judgment stage to attempt to resolve the issue of whether or not Thornton was obliged to eliminate a non-tenure track faculty member. The district court abused its discretion in making its initial finding of fact regarding Dr. Thornton's decision to eliminate a teaching position. We turn now to the effect of this error.

**C. The District Court's Refusal to Grant Stolle a 24-Hour Continuance**

Stolle appeals as error the district court's refusal to grant him a 24-hour continuance after reversing the finding of fact it made pursuant to Rule 56(g). We review for abuse of discretion a trial court's decision to deny a party's motion for continuance. *Associated Gen. Contractors of Ohio, Inc. v. Drabik*, 214 F.3d 730, 738 (6th Cir. 2000). When determining whether there has been abuse, the court looks to see if the party requesting the continuance "suffered any actual prejudice as result of the denial, [and] whether additional time would have produced more witnesses or added something to the [requesting party's] case." *Id.* (quoting *United States v. Martin*, 740 F.2d 1352, 1360 (6th Cir. 1984). Even so, "[t]rial courts are granted broad discretion on matters of continuances." *Franklin v. Bradshaw*, 695 F.3d 439, 452 (6th Cir. 2012) (citing *Morris v. Slappy*, 461 U.S. 1, 11 (1983)).

The record reveals that in granting summary judgment to Kolbe, the district court made a finding of fact pursuant to Rule 56(g) on July 18, affirmed that finding on December 10, 2013, and then admitted its error at the end of the first day of trial, January 8, 2014. The unwarranted finding of fact, followed by an abrupt reversal of course at the beginning of trial, is problematic. Such procedure inhibits the ability of parties to prepare for trial and increases the likelihood that prejudice to both parties will result. *Huss v. King Co., Inc.*, 338 F.3d 647, 651 (6th Cir. 2003)

("'If . . . the judge subsequently changes the initial ruling and broadens the scope of the trial, the judge must inform the parties and give them an opportunity to present evidence relating to the newly revived issue," as "failure to do so might in some circumstances cause substantial prejudice.") (quoting *Leddy v. Standard Drywall, Inc.*, 875 F.2d 383, 386 (2d Cir. 1989)).

After ascertaining the court's new position on these issues of indisputable fact, counsel for Defendants requested an indefinite continuance, which the court denied. Stolle's counsel did not join in that request or make his own request at that time. The next morning, however, Stolle's counsel requested a 24-hour continuance. The court denied the motion, stating: "It's a very, very simple case. And, in fact, there is no unfair surprise despite the parties either misreading or misunderstanding of the Court's ruling." R. 89, PageID 1581. The court noted that Thornton had been deposed and the reasons for terminating Stolle's contract had been discussed then. Stolle alleges that he was prejudiced by the denial of his request for a 24-hour continuance, arguing that even a brief continuance would have enabled him to "add something" to his case. *Drabik*, 214 F.3d at 738.

While the district court placed counsel in a difficult position, the record fails to show that Stolle suffered the "actual prejudice" necessary to overcome the trial court's "broad discretion" in trial procedure. *Franklin*, 695 F.3d at 452-53. Stolle argues that given 24 more hours he could have: 1) called Holder as a witness at trial to address departmental staffing needs; 2) analyzed course schedules from the years leading up to the non-renewal of Stolle's contract in order to counter Thornton's claims regarding staffing needs; and 3) included in the trial presentation emails related to the status of Zhao's position in the department. We examine each argument in order.

16

During discovery and case preparation—and before summary judgment—Stolle never deposed Holder, even though Holder was the only faculty member on Thornton's ad hoc committee who voted to retain Stolle. Nor was Holder included in Stolle's witness list. More importantly, Stolle has not presented any evidence here that Holder's testimony was necessary to the issues at trial or that Holder could prove any evidence that was not already available at the trial through other sources.

Because he had not taken Holder's deposition nor obtained his affidavit, Stolle's arguments are based solely upon the single email from Holder regarding Stolle's termination. The email stated: "My recommendation stands about his teaching performance. Regarding the department need, based only on the RCM numbers I have seen, keeping him is justified." R. 50-12, PageID 1089. Stolle presents no evidence here that Holder would have provided any information about departmental staffing needs or the relation of such needs to the budgetary issues that was not already available. In both discovery and at trial, Stolle questioned the other members of the ad hoc faculty committee regarding the decision to terminate his employment in light of the department's staffing needs. During discovery, Stolle obtained access to departmental budgetary records and used this material to question witnesses at trial regarding staffing needs. It is highly unlikely that Stolle would have been able to find and bring Holder to testify in the 24-hour period requested, but even if that were possible, Stolle has failed to show any actual prejudice as a result of his inability to call Holder as a witness.

Next, Stolle alleges that he was prejudiced by an inability to examine Department of Finance course schedules in order to evaluate staffing needs. During the course of discovery Stolle had access to Department of Finance course section counts from at least the three previous years, which included information about courses, instructors, and enrollment numbers. Stolle

17

referenced these materials in motions dating to April 16, 2013 and questioned Thornton about the section counts at trial. Although Stolle argues that he could have used these schedules to demonstrate that adjuncts were retained to teach several courses while Stolle was not renewed, given that Stolle's counsel had long possessed the relevant documents and used them to question Thornton about these issues at trial, Stolle has failed to show that he suffered actual prejudice due to the loss of an additional 24 hours to consider these materials. *See United States v. Cohen*, 515 F. App'x 405, 411 (6th Cir. 2013) (no prejudice due to lack of continuance where moving party had copies of materials well in advance of hearing).

Stolle's argument that he was prejudiced by his failure to produce emails concerning Zhao's future employment at KSU's finance department also fails to suggest any actual injury. During trial, Stolle's counsel questioned Thornton about Zhao's absence as well as the possibility that she might not return to campus, and elicited testimony that if Zhao resigned, her classes would need to be covered and the department would have saved the costs of her salary. Counsel's questioning also resulted in Thornton's admission that he encouraged Zhao not to resign. In light of such testimony, Stolle has provided no evidence that producing the actual emails between Thornton and Zhao would have "add[ed] [any]thing" to his case. *Drabik*, 214 F.3d at 738.

The request at issue here was for a 24-hour continuance. Stolle has not demonstrated that the provision of such time would have produced more witnesses or added something to the case; he also fails to show that he suffered actual prejudice as a result of the trial court's denial of his request. Under the standards governing denial of a continuance, the circumstances of the case and claims of prejudice alleged by Stolle are not sufficient to warrant a reversal of the district court's broad discretion to govern trial procedure.

### III. CONCLUSION

Stolle did not prove that he had suffered an adverse action sufficient to prove a prima facie case of retaliation under the First Amendment, therefore we AFFIRM the district court's grant of summary judgment to Kolbe and Thornton.  The district court did abuse its discretion in making an unwarranted finding of fact pursuant to Rule 56(g), but Stolle failed to show that he suffered actual prejudice as a result. Therefore, denial of the motion for a 24-hour continuance did not rise to the level of an abuse of discretion and is AFFIRMED.